# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP. | §<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:18-CV-00469<br>Judge Mazzant |
| v. | | |
| MICRO FOCUS INTERNATIONAL, PLC | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Micro Focus International, PLC's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Serve, and Improper Service of the Complaint (Dkt. #12); Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp.'s Motion for Leave to File Amended Complaint (Dkt. #63); Plaintiffs' Request for Oral Argument on Plaintiffs' motion for leave (Dkt. #73); and Plaintiffs' Corrected Request for Oral Argument on Plaintiffs' motion for leave (Dkt. #74). Having considered the motions and the relevant pleadings, the Court finds Defendant's motion to dismiss should be granted (Dkt. #12); Plaintiffs' motion for leave should be granted (Dkt. #63); and Plaintiffs' requests for oral argument should be denied as moot (Dkt. #73; Dkt. #74).

## BACKGROUND

### I. Motion to Dismiss

Plaintiffs filed this suit on July 2, 2018, alleging patent infringement of United States Patent Numbers 9,971,678, 9,298,864, and 8,924,192 (Dkt. #1).[1] On October 17, 2018, Defendant filed the motion at issue (Dkt. #12). Defendant moves the Court to dismiss Plaintiffs' Complaint

---

1. Plaintiffs filed three other related cases in this Court. *See Wapp Tech Ltd. P'ship v. Hewlett-Packard Enter. Co.* 4:18-CV-468-ALM; *Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*, 4:18-CV-501-ALM; *Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*, 4:18-CV-519-ALM.

arguing (1) the Court lacks personal jurisdiction over Defendant and (2) Plaintiffs failed to

properly serve Defendant.  Plaintiffs filed a response to Defendant's motion on November 1, 2018

(Dkt. #15).  Defendant filed a reply to the motion on November 8, 2018 (Dkt. #16).

## II.      Jurisdictional Discovery

After a careful review of Defendant's motion, the Court ordered the parties to conduct

jurisdictional discovery on December 20, 2018 (Dkt. #17).  As the parties engaged in jurisdictional

discovery, a discovery dispute arose.  Accordingly, on January 16, 2019, Defendant filed a Motion

for Protective Order (Dkt. #18).  Defendant requested a protective order because it believed

Plaintiffs' jurisdictional discovery requests were (1) improperly broad; (2) related to piercing the

veil—a theory not previously asserted by Plaintiffs; and (3) were irrelevant as they related to the

merits of the case, not to jurisdiction (Dkt. #18 at pp. 12–18).  The parties filed a response and

reply to the motion (Dkt. #19; Dkt. #22).   The Court disagreed with Defendant and denied

Defendant's motion for protective order finding, "Overall, [Defendant] cannot argue that the

contacts cited by [Plaintiffs] are attributable only to its subsidiaries and simultaneously contend

that [Plaintiffs are] not entitled to explore [Defendant's] relationship with these subsidiaries."

(Dkt. #24 at p. 4).  As a result, on February 7, 2019, the Court ordered that:

> The parties shall complete jurisdictional discovery with **twenty-one
> (21) days** of this order—**February 28, 2019**. The parties shall
> amend or supplement the briefing related to Micro Focus's motion
> to dismiss within **eight (8) days** of completing jurisdictional
> discovery—**March 8, 2019**.

(Dkt. #24 at pp. 4–5) (emphasis in original).

## III.     Amended Complaint, Supplemental Briefing, and Motion to Strike

On March 8, 2019, the parties filed supplemental briefing on Defendant's motion to dismiss

(Dkt. #30; Dkt. #32).  On the same day, without seeking leave of court, Plaintiffs filed a First

Amended Complaint adding five additional parties—Seattle SpinCo Inc., EntIT Software LLC, EntCo Interactive (Israel) Ltd., Entco Government Software LLC, and Micro Focus (US) Inc. (Dkt. #28 ¶¶ 7–11).

On March 12, 2019, without seeking leave of court, Defendant filed a reply to Plaintiffs' supplemental briefing (Dkt. #36).[2] The next day, Plaintiffs moved to strike Defendant's reply to Plaintiffs' supplemental briefing and sought clarification concerning the Court's Order denying Defendant's motion for protective order (Dkt. #41). Defendant filed a response to Plaintiffs' motion to strike the same day (Dkt. #42). On June 6, 2019, the Court denied Plaintiffs' motion to strike Defendant's reply (Dkt. #60). The Court also ordered Plaintiffs to file a motion for leave to rectify Plaintiffs' improper filing of the First Amended Complaint without leave of court (Dkt. #60).

### IV.    Motion for Leave to Amend Complaint and Oral Argument Requests

Pursuant to the Court's June 6 order, Plaintiffs filed a Motion for Leave to File First Amended Complaint on June 10, 2019 (Dkt. #63). On June 21, 2019, Defendant filed a response to Plaintiffs' motion for leave (Dkt. #67). Defendant argues the Court should deny Plaintiffs' motion because it is futile and there is evidence that Plaintiffs are acting in bad faith. Plaintiffs filed a reply in support of their motion on June 28, 2019 (Dkt. #69). Defendants filed a sur-reply to the motion on July 5, 2019 (Dkt. #70).

On July 18, 2019, Plaintiffs filed a Request for Oral Argument on Plaintiffs' motion for leave (Dkt. #73). Plaintiffs request a hearing on the motion because the briefing, "made reference to statements by counsel for [Defendant] pursuant to settlement discussion, but which were not presented to the Court due to potential confidentiality issues." (Dkt. #73 at p. 1). In the Certificate

---

2. Defendant titles the filing, "Defendant Micro Focus International PLC's Response to Wapp's Supplemental Brief Regarding the Motion to Dismiss . . . ." (Dkt. #36). The Court labels this filing a "reply" to avoid confusion.

of Conference to the request, Plaintiffs state that "[d]espite attempts from [Plaintiffs] to schedule a telephonic conference for this Motion for Oral Argument, [Defendant] did not provide any availability." (Dkt. #73 at p. 2). The next day, Plaintiffs filed a corrected Request for Oral Argument (Dkt. #74). The only difference between the original and corrected requests for oral argument is that Plaintiffs allege in the Certificate of Conference to the corrected request that "[d]espite efforts to do so, [the parties] were unable to find a mutually available time for a telephonic conference." (Dkt. #74 at p. 2).

## LEGAL STANDARD

### I.    Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) enables a defendant to move to dismiss a case for lack of personal jurisdiction. Courts "apply Federal Circuit law when reviewing claims 'intimately involved with the substance of the patent laws' and the law of the regional circuit when reviewing state law claims." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017) (quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003)); *see also Apicore US LLC v. Beloteca, Inc.*, 2:19-CV-00077-JRG, 2019 WL 1746079, at *3 (E.D. Tex. Apr. 18, 2019) (quoting *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015)) ("Federal Circuit law governs personal jurisdiction where 'a patent question exists.'").

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a *prima facie* burden." *Celgard*, 792 F.3d at 1377 (citing *Coyle*, 340 F.3d at 1349). The plaintiff also bears a *prima facie* burden if the parties conduct jurisdictional discovery, the parties dispute the jurisdictional facts, and the court does not conduct a jurisdictional hearing. *Id.*; *accord Polar*

*Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1347 (Fed. Cir. 2016) (citing *Celgard*, 792 F.3d at 1378).[3]

Under the *prima facie* standard, courts "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). In determining whether a plaintiff has made a *prima facie* showing of personal jurisdiction, courts ask "'whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process.'" *NexLearn, LLC*, 859 F.3d at 1375 (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

Federal due process requires that an out-of-state defendant have sufficient "minimum contacts" with the forum state such that the suit does not offend "traditional notions of fair play and substantial justice." *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1137 (Fed. Cir. 2018) (citing *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, –– U.S. ––––, 137 S. Ct. 1773, 1785 (2017)). A defendant's contacts are sufficient to meet the federal due process requirements if the court may exercise general or specific jurisdiction over the defendant. *NexLearn, LLC*, 859 F.3d at 1375. General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop*

---

3. In both its supplemental brief in support of its motion to dismiss and its sur-reply to Plaintiffs' motion for leave, Defendant contends that because the jurisdictional facts are not in dispute, Plaintiffs bear the burden of proving personal jurisdiction by a preponderance of the evidence (Dkt. #32 at p. 6; Dkt. #70 at p. 4 n.1). Considering the parties' vigorous disagreement concerning Plaintiffs' alter ego theory, the Court considers the jurisdictional facts in dispute. Therefore, Plaintiffs must make a *prima facie* showing of personal jurisdiction.

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  General jurisdiction does not require the cause of action to relate to the defendant's contacts with the forum.  *Autogenomics*, 566 F.3d at 1017 (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)).  In assessing whether the defendant's contacts enable the court to exercise general jurisdiction, courts assess the nature and number of the defendant's contacts.  *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009)).

The question of whether a court may exercise specific jurisdiction over a defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  Under a specific jurisdiction analysis, "the defendant's suit-related conduct must create a substantial connection with the forum state."  *Id.*  The determine whether specific jurisdiction exists, the court asks whether "(1) the defendant purposefully directed its activities to the forum State; (2) the claims arise out of or relate to those activities (collectively, the minimum contacts prong); and (3) the assertion of jurisdiction is reasonable and fair."  *NexLearn, LLC*, 859 F.3d at 1376 (citing *Avocent*, 552 F.3d at 1332).  "The plaintiff bears the burden as to the first two requirements, and if proven, the burden then shifts to the defendant to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *M-I Drilling Fluids UK Ltd.*, 890 F.3d at 1000 (citations omitted).

## II.   Amended Pleadings

"When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings."  *Tex. Indigenous Council v. Simpkins*, 544 F. App'x. 418, 420 (5th Cir. 2013).  Rule 15(a) governs a party's request to amend its pleading

before a scheduling order's deadline to amend passes. *See id.* Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x. 866, 868 (5th Cir. 2010) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)(2). Rule 15(a) also instructs the court to "freely give leave when justice so requires." The rule "'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)); *see also Dueling v. Devon Energy Corp.*, 623 F. App'x. 127, 129 (5th Cir. 2015) (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)) ("In other words, 'district courts must entertain a presumption in favor of granting parties leave to amend.'"). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 16(b)(4) provides that a scheduling order issued by the Court "may be modified only for good cause and with the judge's consent." *See Agredano v. State Farm Lloyds*, No. 5:15-CV-1067-DAE, 2017 WL 5203046, at *1 (W.D. Tex. July 26, 2017) (citing *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012)) (stating, "a party seeking leave to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension."). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)). In determining whether good cause exists, courts consider a four-part test: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). Only after the movant demonstrates good cause under Rule 16(b)(4) does "the more liberal standard of Rule 15(a)" apply to a party's request for leave to amend. *Id.*

## ANALYSIS

### I. Defendant's Motion to Dismiss

The Court begins with Defendant's motion to dismiss (Dkt. #12). Defendant moves the Court to dismiss Defendant from the suit arguing (1) the Court lacks personal jurisdiction over Defendant and (2) Plaintiffs failed to properly serve Defendant. Plaintiffs respond that Defendant is subject to personal jurisdiction and Defendant waived service (Dkt. #15).

## A. Personal Jurisdiction

Before the Court ordered jurisdictional discovery, the parties disputed whether certain contacts cited by Plaintiffs as evidence of Defendant's "continuous and systematic" contacts with the Eastern District of Texas were attributable to Defendant or its "indirect, wholly-owned subsidiaries." After jurisdictional discovery, the parties' arguments changed. Plaintiffs now contend that Defendant is subject to personal jurisdiction because (1) Defendant previously accepted the jurisdiction of this Court in a different case and (2) Defendant's subsidiaries are alter egos of Defendant (Dkt. #30 at pp. 7–11). Therefore, Plaintiffs claim that the contacts of Defendant's subsidiaries may be imputed to Defendant (Dkt. #30 at pp. 11–12). Defendant maintains that (1) it did not waive its personal jurisdiction challenge in this case by not challenging personal jurisdiction in the previous case and (2) Plaintiffs cannot establish that the subsidiaries are Defendant's alter egos (Dkt. #32; Dkt. #36).

### i. Previous Suit

Plaintiffs first explain that Defendant was previously sued in this District in an unrelated case, but did not challenge the Court's exercise of personal jurisdiction in that case (Dkt. #30 at p. 7).[4] Plaintiffs contend that Defendant's "acceptance of jurisdiction in that action belies its inconsistent position here." (Dkt. #30 at p. 7). Plaintiffs cite no authority to support their position.

Defendant responds that it did not waive its personal jurisdiction challenge in this case by not challenging personal jurisdiction in the prior, unrelated case (Dkt. #36 at pp. 5–6) (citing *Rozenblat v. Sandia Corp.*, 05-1556, 2006 WL 678923, at *3 (Fed. Cir. Mar. 17, 2006)). In *Rozenblat*, Mr. Rozenblat argued "before the district court that personal jurisdiction was established because [the defendants] appeared in that court in another action previously filed by

---

4. *See Uniloc USA, Inc. v. ABB Ltd.*, 6:13-cv-00906-RWS-KNM (E.D. Tex. Nov. 25, 2013).

Mr. Rozenblat . . . ." 2006 WL 678923, at *3. The Federal Circuit noted that "the district court correctly observed that the prior appearance did not necessarily waive the personal jurisdiction requirement in future actions, nor constitute related business conduct within the jurisdiction." *Id.* If the defendants in *Rozenblat* did not necessarily waive the personal jurisdiction requirement when they appeared in a previous case filed by Mr. Rozenblat, the Court does not believe that Defendant waived the personal jurisdiction requirement here by appearing in a previous, unrelated case filed in the District.

### ii.    Alter Ego

Plaintiffs next argue that the evidence gathered from jurisdictional discovery demonstrates that Defendant's Texas subsidiaries are Defendant's alter egos and, therefore, Defendant is subject to personal jurisdiction in this case because the contacts of Defendant's subsidiaries may be imputed to Defendant.[5] "For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory." *Celgard*, 792 F.3d at 1379. "To impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one.'" *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, 2:15-CV-2049-JRG, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016) (quoting *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007)). However, "[a]s a general matter, the corporate form should not be lightly disregarded." *Id.* (citing *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990)). "As a result, the typical corporate relationship between a parent and

---

5. Oddly, Plaintiffs do not allege their alter ego theory in the jurisdictional allegations of the Complaint or proposed First Amended Complaint. Instead of ordering Plaintiffs to replead, the Court will treat the alter ego theory as if it is alleged in the Complaint.

subsidiary . . . is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory." *Id.* (citing *QR Spex, Inc.*, 507 F. Supp. 2d at 663).

In analyzing personal jurisdiction, "The Supreme Court has forbidden the exercise of jurisdiction over a defendant on the basis of unilateral acts of third-parties." *Celgard*, 792 F.3d at 1380 (citing *Hanson v. Denckla*, 357 U.S. 235, 253–54 (1958)). Therefore, under an alter ego theory, the defendant must deliberately engage in significant activities with the forum for a court's exercise of personal jurisdiction to comport with due process. *Nuance Commc's, Inc.*, 626 F.3d at 1232 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).

Courts consider a number of factors in assessing the relationship between a parent company and its alleged alter egos, such as: (1) the parent company's attempt to purposely direct or control the activities of the subsidiary; (2) evidence of common control or joint-venture agreements; (3) the amount of the subsidiary's stock owned by the parent company; (4) the existence of separate headquarters for each entity; (5) the sharing of common officers and directors; (6) the observance of corporate formalities; (7) the maintenance of separate accounting systems; (8) the subsidiary's exercise of complete authority over its daily operations; and (9) the degree of the parent company's control over the general policy and administration of the subsidiary. *See Celgard*, 792 F.3d 1380–81 (considering factors (1) and (2)); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (considering factors (1) and (3)–(7)); *Licea v. Curacao Drydock Co., Inc.*, 627 F. App'x. 343, 348 (5th Cir. 2015) (quoting *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 174–75 (Tex. 2007)) (citing factors (1), (3)–(4), (6), and (9)). Here, the parties address the first, third, and sixth factors (Dkt. #30 at pp. 8–11; Dkt. #36 at pp. 6–12).

### a. Defendant's Control of its Subsidiaries

Plaintiffs allege that Defendant "presides over this Gordian [K]not of a corporate structure (having about 300 subsidiaries), setting the internal policies of these disparate groups." (Dkt. #30 at p. 9). To support their argument, Plaintiffs cite evidence that Defendant's Board of Directors ("Board") "reserve[s] for consideration" matters such as (1) business strategy; (2) financing arrangements; (3) material acquisitions and divestments; (4) approval of the annual budget; (5) major capital expenditure projects; (6) risk management; (7) treasury policies; and (8) monitoring internal controls. (Dkt. #30 at p. 10) (citing "Ex. 3 at 55"). Plaintiffs also cite Defendant's statement, "[t]he management of the Group as a whole is delegated to the Executive Chairman and the executive committees." (Dkt. #30 at p. 10) (citing "Ex. 3 at 58").

The Court examined Plaintiffs' Exhibit 3—Defendant's Annual Report and Accounts 2018—and finds little of the information Plaintiffs cite. To begin, Plaintiffs claim to cite Defendant's "2017 Annual Report." (Dkt. #30 at p. 10). Yet, as previously stated, Exhibit 3 is Defendant's 2018 Annual Report (*See* Dkt. #30, Exhibit 3). Moreover, Plaintiffs cite page 58 of Exhibit 3 when Exhibit 3 ends at page 57 (*See* Dkt. #30 at p. 10; Dkt. #30, Exhibit 3). The Court also cannot find the information Plaintiffs cite in Exhibit 3. For example, Exhibit 3 does not state that the Board "reserve[s] for consideration" the factors listed by Plaintiffs. The Court also cannot locate the statement, "[t]he management of the Group as a whole is delegated to the Executive Chairman and the executive committees." In fact, Exhibit 3 appears to mention the Board only once, "The board continues to target a modest level of gearing for a company with the cash-generating qualities of Micro Focus with a target net debt to Adjusted EBITDA multiple of 2.7 times." (Dkt. #30, Exhibit 3 at p. 7). Considering these issues, the Court assumes Plaintiffs accidently attached Defendant's 2018 Annual Report instead of Defendant's 2017 Annual Report.

Turning to the substance of Exhibit 3, it does not support a *prima facie* showing of Plaintiffs' alter ego theory. Exhibit 3 speaks to Defendant's financial position in 2018 and demonstrates that Defendant instituted general financial policies and strategies for its subsidiaries (*See* Dkt. #30, Exhibit 3). Otherwise, it does not show the level of control by Defendant over its subsidiaries that is necessary to support an alter ego theory.

Plaintiffs next suggest that Defendant sets the budget, revenue, and business goals of its subsidiaries (Dkt. #30 at p. 10). Plaintiffs cite the deposition of Raffi Margaliot, a Senior Vice President and General Manager for Application Delivery Management ("ADM")—one of the "five key businesses which go under the Micro Focus brand." (Dkt. #30, Exhibit 2 at p. 4).[6] During his deposition, Mr. Margaliot testified:

> Q. What business relationship does [Defenant] have with EntIT Software, LLC?[7]
>
> A. So for my ADM business group, we get, again, as I said, goals for profit generation, which would include budget for spend and revenue target, and we execute throughout the year to deliver these profits.
>
> Q. Are there any other instructions or communications that come from [Defendant] to your group in terms of how you should operate that group?
>
> A. No, we do have reporting.
>
> Q. What do you mean by that?
>
> A. We report up to [Defendant] on our business performance.

(Dkt. #30, Exhibit 2 at p. 10). On its face, a parent company setting financial goals or requiring financial reporting from its subsidiaries does not present a *prima facie* case that the subsidiary is

---

6. Defendant previously acknowledged that Defendant and its subsidiaries collectively use the "Micro Focus" tradename (Dkt. #17 at p. 4).
7. Plaintiffs allege that EntIT Software, LLC is another wholly owned subsidiary of Defendant (Dkt. #30 at p. 5).

the parent company's alter ego.[8] *See Fellowship Filtering Techs., LLC*, 2016 WL 6917272, at \*2

(quoting *QR Spex, Inc.*, 507 F. Supp. 2d at 663) ("To impute the contacts of a third party to the

defendant under an alter ego theory, the lines between the defendant and the third party must

become 'so blurred that the two become one.'"); *Licea*, 627 F. App'x. at 348 (quoting *PHC-*

*Minden, L.P.*, 235 S.W.3d at 175) ("'But the degree of control the parent exercises must be greater

than that normally associated with common ownership and directorship . . . .'").

Plaintiffs next cite an instance where Defendant shared a common director with its

subsidiaries (Dkt. #30 at p. 10). As stated in the deposition of Philip Horner—Defendant's

Company Secretarial Manager—Chris Hsu acted as a director for Defendant while simultaneously

acting as a director for two of Defendant's subsidiaries (Dkt. #12, Exhibit 1; Dkt. #30, Exhibit 1

at p. 4). The Court cannot find that the shared directorship of one corporate officer is sufficient to

show a *prima facie* case of alter ego. *Fellowship Filtering Techs., LLC*, 2016 WL 6917272, at \*2

(citing *QR Spex, Inc.*, 507 F. Supp. 2d at 663) (emphasis added) ("[T]he typical corporate

relationship between a parent and subsidiary, including *one hundred percent* stock ownership and

*identity of directors and officers*, is not a sufficient basis to impute the contacts of a third party to

the defendant under an alter ego theory."); *see also PHC-Minden, L.P.*, 235 S.W.3d at 175

(quoting *Gentry v. Credit Plan Corp. of Hous.*, 528 S.W.2d 571, 573 (Tex. 1975)) (emphasis

added) ("'[A] subsidiary corporation will not be regarded as the alter ego of its parent merely

because of stock ownership, *a duplication of some or all of the directors or officers*, or an exercise

of the control that stock ownership gives to stockholders.'").

---

8. Plaintiffs assert this argument again in their contention that Defendant and its subsidiaries do not respect corporate formalities (Dkt. #30 at p. 8). The Court does not address Plaintiffs' argument twice because it would reach the same conclusion.

Accepting Plaintiffs' cited evidence as true and resolving all factual conflicts in Plaintiffs' favor, the cited evidence either (1) does not state what Plaintiffs claim it does or (2) demonstrates a close relationship between Defendant and its subsidiaries, but nothing more. Accordingly, Plaintiffs do not make a *prima facie* showing that Defendant exercises a degree of control over its subsidiaries sufficient to establish that Defendant's subsidiaries are Defendant's alter egos.

### b.  Defendant's Stock Ownership

It is uncontroverted that Defendant owns 100% of its subsidiaries' stock (*See* Dkt. #36 at pp. 7–12). Therefore, this factor weighs in favor of Plaintiffs' alter ego theory. However, 100% stock ownership by a parent company of its subsidiaries cannot alone establish an alter ego theory. *See Fellowship Filtering Techs., LLC*, 2016 WL 6917272, at \*2 (citing *QR Spex, Inc.*, 507 F. Supp. 2d at 663); *PHC-Minden, L.P.*, 235 S.W.3d at 175 (quoting *Gentry*, 528 S.W.2d at 573).

### c.  Corporate Formalities

Plaintiffs next cite instances demonstrating that Defendant and its subsidiaries do not respect corporate formalities (Dkt. #30 at pp. 8–9). First, Plaintiffs note that Mr. Margaliot reported to Stephen Murdoch—Defendant's CEO—and certain employees of other subsidiaries reported to Mr. Margaliot (Dkt. #30, Exhibit 2 at p. 12). Mr. Margaliot testified that Mr. Murdoch sets his pay and evaluates his performance (Dkt. #30, Exhibit 2 at pp. 12–13). In describing his relationship with Mr. Murdoch, Mr. Margaliot stated that he calls Mr. Murdoch once or twice a month; meets with Mr. Murdoch once a quarter to update him on performance results; and hears Mr. Murdoch present at staff or leadership meetings (Dkt. #30, Exhibit 2 at pp. 12–14). Mr. Margaliot also testified that other "product group leaders" report to Mr. Murdoch (Dkt. #30, Exhibit 2 at p. 14). Mr. Margaliot also could not recognize the name of at least one of Defendant's other subsidiaries and Mr. Margaliot—as a board member of Defendant's subsidiary "EntIT

15

Interactive"—could only remember the name of one other EntIT Interactive board member (Dkt. #30, Exhibit 2 at pp. 5–6, 10–11).[9]   Accepted as true, these allegations demonstrate that Defendant and its subsidiaries disregard corporate formalities to the extent that (1) the relationship between Mr. Murdoch and the leading directors of Defendant's subsidiaries is blurred and (2) the boards of at least some of Defendant's subsidiaries are not active or used.

Defendant contests Plaintiffs' interpretation of the evidence (Dkt. #36 at pp. 9–11). Defendant also provides other, separate examples of how Defendant and its subsidiaries respect corporate formalities (Dkt. #32 at pp. 12–14; Dkt. #36 at pp. 9–11).   Specifically, Defendant produced evidence of entity-specific income and property tax returns; arms-length transactions between the entities; policies concerning cross-entity transactions; and explains that at least one employee—who is employed by a subsidiary—is designated as a contractor by other subsidiaries when he performs work for the other subsidiaries (Dkt. #30, Exhibits 24–28; 34 at pp. 9, 16; 35 at pp. 25–27).  Therefore, there is contravening evidence that Defendant and its subsidiaries strive to respect corporate formalities.

Considering Plaintiffs' uncontroverted allegations as true, and resolving the factual disputes in Plaintiffs' favor, there is at least some evidence that Defendant and its subsidiaries do not respect certain corporate formalities.  Nevertheless, this evidence does not present a *prima facie* case that Defendant's subsidiaries are Defendant's alter egos because the evidence does not show that the lines between Defendant and its subsidiaries are "'so blurred that the two become

---

9. Plaintiffs also provide as an example of Defendant's lack of respect for corporate formalities Defendant's Federal Rule of Civil Procedure 30(b)(6) witness's inability to remember which subsidiary acquired his previous employer and his statement that his "paycheck stub has changed multiple times." (Dkt. #30, Exhibit 7 at pp. 23–24).  Even when these statements are accepted as true, they only speak to the witness's confusion concerning a complicated merger.  The evidence does not show a lack of respect for corporate formalities.

one.'" *Fellowship Filtering Techs., LLC*, 2016 WL 6917272, at \*2 (quoting *QR Spex, Inc.*, 507 F. Supp. 2d at 663).

### iii.    Defendant's Contacts

As Plaintiffs do not make a *prima facie* showing that Defendant's subsidiaries are Defendant's alter egos, the Court cannot impute the contacts of Defendant's subsidiaries to Defendant.  As Plaintiffs no longer allege that Defendant's contacts are enough to establish personal jurisdiction, the Court must dismiss Defendant as the Court cannot exercise personal jurisdiction over Defendant (*See* Dkt. #30).[10]  As the Court dismisses Defendant for lack of personal jurisdiction, the Court does not address Defendant's improper service argument (Dkt. #12 at pp. 16–18).

## II.    Motion for Leave to Amend

The Court now turns to Plaintiffs' motion for leave to amend complaint (Dkt. #63).  The Court has not yet entered a scheduling order in this case.  Therefore, Rule 15(a) governs Plaintiffs' motion for leave to amend.  *See Tex. Indigenous Council*, 544 F. App'x. at 420.  Because Rule 15(a) governs Plaintiffs' motion, the Court considers the factors provided by *Smith* and must "freely give leave" if justice so requires.  393 F.3d at 595.  Plaintiffs argue that the *Smith* factors are met (Dkt. #63 at pp. 4–7).  Defendant responds stating that Plaintiffs proposed amendments are futile and there is evidence that Plaintiffs are acting in bad faith (Dkt. #67 at pp. 6–20).[11]

---

10.  Even if Plaintiffs continued to allege that the Court may exercise general personal jurisdiction over Defendant based on Defendant's contacts with the forum, the Court would find that Plaintiffs have not provided sufficient evidence to establish a *prima facie* case of general personal jurisdiction over Defendant.

11.  Defendant does not contest the undue delay, repeated failure to cure deficiencies, or the undue prejudice factors from *Smith* (*See* Dkt. #67).  As Rule 15(a) "'evinces a bias in favor of granting leave to amend,'" the Court finds that these uncontested factors weigh in favor of granting Plaintiffs' motion.  *Jones*, 427 F.3d at 994 (quoting *Lyn–Lea Travel Corp.*, 283 F.3d at 286); *see also Dueling*, 623 F. App'x. at 129 (quoting *Mayeaux*, 376 F.3d at 425) ("In other words, 'district courts must entertain a presumption in favor of granting parties leave to amend.'").

### A. Futility

Plaintiffs filed their proposed First Amended Complaint on March 8, 2019 (Dkt. #28). In the proposed First Amended Complaint, Plaintiffs seek to add five of Defendant's subsidiaries to this suit—Seattle SpinCo Inc. ("SSI"), EntIT Software LLC ("EntIT"), EntCo Interactive (Israel) Ltd., Entco Government Software LLC, and Micro Focus (US) Inc. (Dkt. #28 ¶¶ 7–11). Defendant explains that on October 15, 2018, SSI and EntIT filed a declaratory judgment action in the United States District Court for the District of Delaware ("Delaware Suit") asserting that the patents at issue in this case are invalid (Dkt. #67 at p. 9). Although this case was filed on July 2, 2018, Defendant contends that Plaintiffs' proposed First Amended Complaint adding SSI and EntIT cannot relate back to July 2, because Plaintiffs cannot show "that each party to be brought in by [the amended complaint] 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" (Dkt. #67 at p. 13) (citing FED R. CIV. P. 15(c)(1)(C)(ii)). As the First Amended Complaint cannot relate back to July 2, Defendant concludes that the Delaware Suit is the first-filed suit (Dkt. #67 at pp. 17–19). Pursuant to the first-to-file rule, Defendant argues that adding its subsidiaries to this suit is futile, because the case must proceed in Delaware (Dkt. #67 at pp. 17–19).

To begin, Defendant claims that only two of the five parties added by Plaintiffs' proposed First Amended Complaint are parties to the Delaware Suit. As a result, it is not futile to add the three other parties. Concerning SSI and EntIT, the Court does not believe that an amendment is futile simply because the amendment may require the case to be transferred. The first-to-file rule is a venue and efficiency consideration, not an adjudication on the merits or a question of jurisdiction. "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases

18

substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). "When a party moves to transfer under the first-to-file rule, the second-filed court must examine the two pending cases to see if the subject matter 'might substantially overlap.'" *Brown v. Peco Foods, Inc.*, 4:07CV99-KS-MTP, 2008 WL 4145428, at *2 (S.D. Miss. Feb. 25, 2008) (quoting *Cadle Co.*, 174 F.3d at 606). "If the likelihood of substantial overlap exists, then 'the proper course of action [is] for the [second-filed] court to transfer the case' to the first-filed court." *Id.* (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). "[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). Even if the Court later decides to transfer this case to the District of Delaware pursuant to the first-to-file rule, Plaintiffs might still prevail against SSI and EntIT on the claims asserted in the proposed First Amended Complaint. Consequently, the Court does not believe that adding SSI and EntIT to this suit is futile.

B. **Bad Faith or Dilatory Motive**

Defendant also alleges that Plaintiffs acted in bad faith by continuing to assert that Defendant was a proper party to this suit (Dkt. #67 at pp. 19–20). There is no reason to address Defendant's bad-faith argument as Defendant will be dismissed from the suit and Defendant's argument does not relate to the parties Plaintiffs intend to add to this suit. Even so, the Court finds little evidence to support Defendant's bad-faith assertion. Considering the arguments above, the Court finds that Defendant provides no reason that overcomes the presumption in favor of granting Plaintiffs leave to amend. Accordingly, Plaintiffs' motion for leave should be granted and Plaintiffs' requests for oral argument on its motion for leave should be denied as moot.

## CONCLUSION

Based on the preceding discussion, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Serve, and Improper Service of the Complaint (Dkt. #12) is hereby **GRANTED**. The Court, therefore, **DISMISSES** Defendant Micro Focus International, PLC from the case.

Moreover, Plaintiffs' Motion for Leave to File Amended Complaint (Dkt. #63) is hereby **GRANTED**. As Plaintiffs' First Amended Complaint (Dkt. #28) contains allegations against Defendant Micro Focus International, PLC, Plaintiffs may file a Second Amended Complaint— removing the allegations against Defendant Micro Focus International, PLC—within **seven (7) days** of the date of this order, without seeking leave of court.[12]

Based on the Court's previous rulings, Plaintiffs' Request for Oral Argument on Plaintiffs' motion for leave (Dkt. #73) and Plaintiffs' Corrected Request for Oral Argument (Dkt. #74) are hereby **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

SIGNED this 13th day of August, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

12. This is not an invitation to add additional allegations against the newly added Defendants or to add additional parties, only to remove the allegations against Defendant Micro Focus International, PLC.