# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SEATTLE SPINCO, INC. ET AL., <br><br> Defendants. | Case No. 4:18-cv-00469-ALM <br><br> **JURY TRIAL DEMANDED** |

## <u>DEFENDANTS' MOTION TO TRANSFER</u>

# TABLE OF CONTENTS

Page(s)

I.  Introduction ........................................................................................................ 1

II.  Factual Background ............................................................................................ 1

III.  Argument ........................................................................................................... 2

    A.  This case is second-filed as compared to the Delaware suit, because the filing date of the SAC does not "relate back" to the Original Complaint.............. 3

        1.  Wapp has consistently demonstrated—including through its repeated, unequivocal admissions—that it did not make any mistake concerning the identity of the Subsidiary Defendants.................. 4

        2.  The Subsidiary Defendants did not know, nor should they have known, of any mistake by Wapp regarding their identities. ...................... 7

    B.  This case should be transferred to the District of Delaware pursuant to the first-to-file rule.................................................................................................. 11

        1.  This is the second-filed of two substantially overlapping patent suits. ........................................................................................................ 12

        2.  The Bank Actions do not affect the transfer analysis. ............................ 13

        3.  The Delaware court, as the first-filed court, is the proper forum to apply the first-to-file analysis. ................................................................ 15

IV.  Conclusion ........................................................................................................ 15

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Amin-Akbari v. City of Austin*,
    52 F. Supp. 3d 830 (W.D. Tex. 2014)......................................................................7

*Balle v. Nueces Cty.*,
    690 Fed. App'x 847 (5th Cir. 2017) ..................................................................3, 6

*Brown v. Peco Foods, Inc.*,
    4:07CV99-KS-MTP, 2008 WL 4145428 (S.D. Miss. Feb. 25, 2008) ....................12

*Cadle Co. v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ....................................................................12, 15

*Colo. River Water Cons. Dist. v. United States*,
    424 U.S. 800 (1976).................................................................................12

*Emp'rs Reins. Corp. v. Bryant*,
    299 U.S. 374 (1937)...................................................................................2

*Flowers v. Lopez*,
    No. 6:17-cv-474, 2018 WL 4178302 (E.D. Tex. Aug. 31, 2018)............................6

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993)..................................................................12

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
    No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017)............12, 13, 14

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014) ..........................................................12, 14, 15

*Hanna v. LeBlanc*,
    716 Fed. App'x 265 (5th Cir. 2017) ..............................................................3

*Jacobsen v. Osborne*,
    133 F.3d 315 (5th Cir. 1998) ...................................................................3, 6, 7

*Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*,
    342 U.S. 180 (1952)................................................................................12

*Krupski v. Costa Crociere SpA*,
    560 U.S. 538 (2010)...............................................................................4, 7, 9, 11

*Mallinckrodt Med. Inc. v. Nycomed Imaging AS*,
    No. 4:98-cv-444, 1998 WL 962203 (E.D. Mo. Nov. 13, 1998) .........................................9, 13

*Mann Mfg., Inc. v. Hortex*,
    439 F.2d 403 (5th Cir. 1971) ...................................................................................................3

*Mitts v. Sikorsky Aircraft Corp.*,
    No. H-10-5164, 2012 WL 12893657 (S.D. Tex. June 26, 2012)............................................11

*Moore v. Tenn.*,
    267 Fed. App'x 450 (6th Cir. 2008) .........................................................................................7

*Myers v. Broadus*,
    No. 6:16-cv-1130, 2019 WL 850835 (E.D. Tex. Feb. 22, 2019).............................................6

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000).................................................................................................................10

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014)...............................................................................................15

*Priester v. Deutsche Bank Nat'l Trust Co.*,
    No. 16-CV-449, 2017 WL 2821715 (E.D. Tex. June 30, 2017)...............................................3

*Ruhrgas Ag v. Marathon Oil Co.*,
    526 U.S. 574 (1999)..................................................................................................................2

*Sanders–Burns v. City of Plano*,
    594 F.3d 366 (5th Cir. 2010) .................................................................................................11

*Sutter Corp. v. P & P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) .................................................................................................15

*Tapp v. Gulf Stream Coach, Inc.*,
    No. 08-1134, 2011 WL 3502023 (E.D. La. Aug. 10, 2011) ...................................................11

*In re Transaction Sys. Archs., Inc.*,
    232 F.3d 905 (Fed. Cir. 2000)................................................................................................14

*Trigo v. TDCJ-CID Officials*,
    No. H-05-2012, 2010 WL 3359481 (S.D. Tex. Aug. 24, 2010) .........................................5, 6, 7

*Vanderbilt v. Vanderbilt*,
    354 U.S. 416 (1957)..................................................................................................................2

*Winzer v. Kaufman Cty.*,
    916 F.3d 464 (5th Cir. 2019) ...............................................................................................3, 6

iii

## I.      INTRODUCTION

Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp. (together, "Wapp") filed their Original Complaint against a single defendant:  Micro Focus International plc.  Because the Court lacked personal jurisdiction over that sole defendant, it was not until Wapp filed its Second Amended Complaint—which, for the first time, included parties over which the Court had jurisdiction—that the Court first came into possession of the controversy.  But the filing date of the Second Amended Complaint does not "relate back" to the Original Complaint.  As such, the Second Amended Complaint post-dates a Delaware declaratory judgment suit covering the very same dispute at issue here.  Thus, this case is the second-filed case.  And, as this Court recently recognized, the court overseeing the first-filed suit is the proper court to determine any dispute as to the first-to-file rule.  Respectfully, therefore, this case should be transferred to the District of Delaware so that court may determine how this suit should proceed.

## II.     FACTUAL BACKGROUND

Given the Court's familiarity with the case background, Defendants provide a brief overview of the facts relevant to the present motion:

- Wapp filed its Original Complaint on July 2, 2018, accusing sole defendant Micro Focus International plc ("MF plc") of infringing U.S. Patent Nos. 9,971,678, 9,298,864, and 8,924,192 (the "Asserted Patents") by allegedly making, using, selling, and offering to sell various software products and functionalities (the "Accused Software").  Dkt. No. 1.

- Wapp filed complaints in this District against customers of the Accused Software, Wells Fargo & Co. and Bank of America Corp., on July 16, 2018, and July 20, 2018, respectively (collectively, the "Bank Actions").  *Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*, No. 4:18-cv-501-ALM ("*Wapp v. Wells Fargo*"), Dkt. No. 1; *Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*, No. 4:18-cv-519-ALM ("*Wapp v. BoA*"), Dkt. No. 1.  Wapp's infringement allegations in the Bank Actions were identical to those asserted against MF plc.

- On October 15, 2018, Seattle SpinCo, Inc. ("SSI") and EntIT Software LLC ("EntIT"), subsidiaries of MF plc and the entities primarily responsible for the Accused Software in the United States, filed a declaratory judgment action against Wapp in the District of Delaware, seeking judgments that the Asserted Patents are invalid and that the Accused

Software does not infringe the Asserted Patents.  *Seattle SpinCo, Inc. v. Wapp Tech Ltd. P'ship*, No. 1:18-cv-1585-RGA ("Delaware suit"), Dkt. No. 1.

- On October 17, 2018, MF plc filed a motion to dismiss this lawsuit for lack of personal jurisdiction, failure to serve, and improper service.  Dkt. No. 12.  Wapp opposed MF plc's motion to dismiss and maintained that MF plc was a proper defendant.  Wapp did not seek at that time to add any new parties to this suit.

- More than four months later, on March 8, 2019—after completing extensive jurisdictional discovery on MF plc—Wapp filed a First Amended Complaint ("FAC"), but without proper leave.  Dkt. No. 28.  In the FAC, Wapp maintained its contention that MF plc was a proper defendant in this suit, and purported to add five new defendants:  SSI, EntIT, EntCo Interactive (Israel) Ltd, EntCo Government Software LLC, and Micro Focus (US) Inc. (collectively, the "Subsidiary Defendants").  On June 10, 2019, nearly a year after bringing this suit, Wapp filed a motion to file the FAC, and in that motion continued to assert that MF plc was a proper defendant.  Dkt. No. 63.

- On August 13, 2019, the Court granted MF plc's motion to dismiss for lack of personal jurisdiction.  Dkt. No. 75.  The Court also granted Wapp's motion to file an amended complaint but ordered Wapp to file a second amended complaint that removed all allegations against MF plc.  *Id.*  Wapp filed that Second Amended Complaint ("SAC") on August 20, 2019.  Dkt. No. 76.

Accordingly, the only defendants presently in this case are the Subsidiary Defendants— none of whom were party to this case prior to the filing of the Delaware suit by SSI and EntIT.

## III.   ARGUMENT

Because this Court had no personal jurisdiction over the only defendant in this lawsuit for the first 13 months of the suit's existence, the Court did not take possession of the controversy until August 20, 2019, when Wapp filed the SAC naming the Subsidiary Defendants.  As such, for those 13 months, this Court was "powerless to proceed to an adjudication."  *See Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999), quoting *Emp'rs Reins. Corp. v. Bryant*, 299 U.S. 374, 382 (1937); *see also Vanderbilt v. Vanderbilt*, 354 U.S. 416, 418–19 (1957) ("It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.").  However, by the time this Court obtained jurisdiction over the controversy, EntIT's and SSI's declaratory judgment suit had been filed in

the District of Delaware, covering the exact same controversy. Thus, under the first-to-file rule, it was the Delaware court that "initially seized of [the] controversy [and] should be the one to decide whether it will try the case." *Mann Mfg., Inc. v. Hortex*, 439 F.2d 403, 407 (5th Cir. 1971). This Court should therefore transfer this suit to the District of Delaware.

A.   **This case is second-filed as compared to the Delaware suit, because the filing date of the SAC does not "relate back" to the Original Complaint.**

When an amended complaint adds new parties to a suit, the amended complaint is afforded the filing date of the previous complaint—that is, the amended complaint "relates back"—only if the requirements of Rule 15(c)(1)(C) are met. Two of those requirements are relevant here. First, the plaintiff must demonstrate that it omitted the newly-added party from the original complaint due to its mistake concerning the party's identity. *Winzer v. Kaufman Cty.*, 916 F.3d 464, 471 (5th Cir. 2019) ("Rule 15(c) requires a '*mistake* concerning the identity of a party.'" (emphasis in original)) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998)); *Hanna v. LeBlanc*, 716 Fed. App'x 265, 269 (5th Cir. 2017); *Balle v. Nueces Cty.*, 690 Fed. App'x 847, 850–51 (5th Cir. 2017) ("[Rule 15(c)(1)(C)] 'is meant to allow an amendment changing the name of a party to relate back to the original complaint ***only*** if the change is the result of an error, such as a misnomer or misidentification.'" (emphasis added)) (citing *Jacobsen*, 133 F.3d at 320). Second, the plaintiff must show that the new party to be brought in by amendment knew or should have known that the action would have been brought against it but for the plaintiff's mistake in identity. Fed. R. Civ. P. 15(c)(1)(C)(ii); *Winzer*, 916 F.3d at 470. It is the plaintiff's burden to prove both of these conditions. *Id.* at 470–71; *see also Priester v. Deutsche Bank Nat'l Trust Co.*, No. 16-CV-449, 2017 WL 2821715, at *5 (E.D. Tex. June 30, 2017). Wapp cannot meet either of these requirements, and therefore the filing date of the SAC cannot relate back to the Original Complaint.

3

> 1. **Wapp has consistently demonstrated—including through its repeated, unequivocal admissions—that it did not make any mistake concerning the identity of the Subsidiary Defendants.**

The SAC cannot relate back to the Original Complaint at least because Wapp cannot demonstrate that its failure to name the Subsidiary Defendants in the Original Complaint was due to a mistake concerning the parties' identities.  As the Supreme Court explained in *Krupski v. Costa Crociere SpA*, 560 U.S. 538, 552 (2010), "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."  Here, Wapp's statements and actions—including Wapp's repeated assertion that MF plc is a proper defendant and Wapp's explicit "encourage[ment]," in this and the co-pending cases, for MF plc to pressure Hewlett Packard Enterprise Company ("HPE") to obtain a license to the Asserted Patents (*see* § III.A.2, *infra*)—demonstrate that Wapp did *not* make any mistake in identity when naming MF plc as the defendant.

To start, Wapp's repeated and unambiguous admissions in multiple filings with this Court leave no doubt that Wapp knowingly and deliberately chose to bring and maintain this suit against MF plc.  Even now, more than a year after the filing of the Original Complaint and after taking extensive discovery into the nature of the Micro Focus structure of companies, Wapp has remained adamant that it was "correct" to sue MF plc and that MF plc was and is a "proper" and "appropriately-named" defendant—*e.g.*:

- "Wapp was correct in suing [MF plc]" (Dkt. No. 30 at 1);

- "Wapp continues to believe that MF plc is an appropriately-named defendant" (Dkt. No. 63 at 4);

- "Wapp continues to believe MF plc is a proper party" (Dkt. No. 63 at 5); and

4

- "[J]urisdictional discovery . . . confirm[ed] that MF plc is a proper party" (Dkt. No. 63 at 5).

Consistent with these repeated assertions, Wapp continued to name MF plc as a defendant in its proposed First Amended Complaint, even as Wapp sought, for the first time, to add the Subsidiary Defendants.  Dkt. No. 28.  That the SAC does not name MF plc is due solely to the lack of personal jurisdiction over MF plc, not because Wapp voluntarily sought to drop MF plc or believed it had made an error in identity.  Dkt. No. 75.  In sum, Wapp's repeated efforts to keep MF plc in this case, even as it sought to add the Subsidiary Defendants, demonstrate that Wapp did not make a mistake as to identity when it named MF plc as a defendant.

Wapp further demonstrated it did not make a mistake under Rule 15(c)(1)(C) when it repeatedly admitted that it added the Subsidiary Defendants as a result of (allegedly) newly-discovered information showing that the Subsidiary Defendants were also involved in the alleged infringement.[1]  *See* Dkt. No. 69 at 4 (in which Wapp asserted "it subsequently became clear that several of MF plc's subsidiaries are also involved and responsible"); Dkt. No. 30 at 9 (in which Wapp purported to add Subsidiary Defendants "[b]ased on [] newly-acquired information" about "what companies are involved with the making and selling of the accused products"); Dkt. No. 63 at 4 ("[T]he jurisdictional discovery ordered by the Court revealed that MF plc works closely with five of its subsidiaries in the making and selling of the infringing products.  Consequently, Wapp properly seeks to add those subsidiaries as named defendants."); *id.* at 5–6 ("[Jurisdictional discovery] revealed additional information about the Micro Focus corporate hierarchy and what

---

[1]  The Subsidiary Defendants dispute Wapp's assertion that Wapp did not know of at least certain of the Subsidiary Defendants' involvement in the conduct at issue—in particular SSI and EntIT.  For purposes of determining whether there was a mistake in *identity*, however, whether Wapp knew or did not know of the Subsidiary Defendants' *involvement* is not material.  *Trigo v. TDCJ-CID Officials*, No. H-05-2012, 2010 WL 3359481, at *18 (S.D. Tex. Aug. 24, 2010).

companies are involved with the making and selling of the accused products.  Based on that newly-acquired information, Wapp now seeks to add five additional defendants . . . .").  Wapp further admitted that "the *purpose* of the First Amended Complaint" was to add new defendants who are also involved in the alleged infringement (*i.e.*, in *addition* to, not *instead* of, MF plc), and whose identities were allegedly uncovered during discovery.  Dkt. No. 63 at 4.

An amendment seeking to add additional parties based on newly discovered information is, as a matter of law, *not* the type of amendment that relates back under Rule 15(c)(1)(C).  *See Balle*, 690 Fed. App'x at 850–51 (stating that an amendment relates back "only if the change is the result of an error, such as a misnomer or misidentification").  Rather, "[w]here the failure to name the correct defendants was the result of lack of knowledge of their identity rather than a mistake in their names, relation back does not apply."  *Flowers v. Lopez*, No. 6:17-cv-474, 2018 WL 4178302, at *2 (E.D. Tex. Aug. 31, 2018) (citing *Jacobsen*, 133 F.3d at 321); *see also Winzer*, 916 F.3d at 471 ("Failing to identify individual defendants cannot be characterized as a mistake." (citing 133 F.3d at 321)); *Myers v. Broadus*, No. 6:16-cv-1130, 2019 WL 850835, at *6 (E.D. Tex. Feb. 22, 2019) ("While his amended complaint concerned the same issues presented in his initial complaint, Myers explained that he discovered the correct defendants only after recently receiving medical records, which cannot be characterized as a 'mistake.'").

*Trigo v. TDCJ-CID Officials* is instructive.  2010 WL 3359481, at *18.  There, a plaintiff sought to amend his complaint to add, alongside the original defendants, additional defendants uncovered during discovery.  The court held that the proposed amended complaint would *not* relate back under Rule 15(c):

> The plaintiffs did not mistakenly sue party A instead of party B.  Rather, the current defendants are prison medical personnel who treated [the plaintiff].  ***[The plaintiff] now alleges that, through discovery, he has learned about additional medical personnel who were also involved in denying him adequate medical care.  This is***

> *not the type of "mistaken identity" that Rule 15 is intended to address*.  Instead,
> this is a purported lack of knowledge about additional parties who treated the
> plaintiff.  In the Fifth Circuit, lack of knowledge of a proposed new defendant is
> not a 'mistake concerning the party's identity' within the meaning of Rule 15(c).

*Id.* (emphasis added) (citing 133 F.3d at 320; *Moore v. Tenn.*, 267 Fed. App'x 450, 455 (6th Cir. 2008)); *see Amin-Akbari v. City of Austin*, 52 F. Supp. 3d 830, 841 (W.D. Tex. 2014) (recognizing that, under Fifth Circuit law, the later discovery of a defendant does not constitute a mistake).

Thus, even if it were true that Wapp first learned of the Subsidiary Defendants through the jurisdictional discovery, the SAC still would not relate back, because adding defendants whose identities are learned through discovery is "not the type of 'mistaken identity' that Rule 15 is intended to address." *Trigo*, 2010 WL 3359481, at *18.

In sum, Wapp's unambiguous and consistent admissions foreclose Wapp from availing itself of Rule 15(c) to relate back the SAC's filing date to the filing of the Original Complaint.

### 2. The Subsidiary Defendants did not know, nor should they have known, of any mistake by Wapp regarding their identities.

As explained above, Wapp's inability to show it made any mistake in the parties' identities is dispositive of the issue.  However, even if Wapp *had* make such a mistake, the SAC still would not relate back to the Original Complaint for another, independent reason:  Wapp would not be able to show that the Subsidiary Defendants knew or should have known of the mistake.

In particular, Rule 15(c)(1)(C)(ii) "asks what the prospective defendant knew or should have known during the Rule 4(m) period." *Krupski*, 560 U.S. at 548 (emphasis omitted).  Based on Wapp's statements and conduct during the Rule 4(m) period, it cannot be shown that the Subsidiary Defendants knew or should have known that they would have been named but for a mistake in identity; rather, all available evidence demonstrated that the Subsidiary Defendants had every reason to believe that Wapp's decision to target MF plc was a deliberate litigation strategy.

Indeed, Wapp made clear in its Original Complaint that its decision to sue MF plc was intentional.  In the Original Complaint, Wapp *extensively referenced and analyzed* the "spin-merger" transaction in which the business unit responsible for the Accused Software was spun out of HPE and merged with an indirect subsidiary of MF plc.  Dkt. No. 1 ¶¶ 11, 18–21, 35–36.  The Original Complaint even cited to publicly available agreements governing the spin-merger, including a so-called "Separation and Distribution Agreement" ("SDA").  *Id.* ¶¶ 20, 36.  The SDA, to which MF plc was *not* a party despite Wapp's repeated misrepresentation to the contrary,[2] evidenced HPE's spin-out of the relevant business unit to SSI—not to MF plc.[3]  Dkt. No. 68-3 at 1, 6.  Wapp's extensive purported analysis of the SDA and its repeated misrepresentations of MF plc's role in the SDA publicly indicated in the Original Complaint that Wapp had full knowledge and understanding of the identities of MF plc and SSI.  *See, e.g.*, Dkt. No. 1 ¶ 20.  Thus, the parties would have had no reason to believe that Wapp was mistaken about the identities of MF plc and SSI.  Additionally, publicly available information further confirmed that after SSI became part of the Micro Focus corporate family, SSI, along with its subsidiaries, including EntIT, remained responsible for the development and sales of the Accused Software.  *See* Dkt. No. 68-4 (Merger Agreement) at § 2.1 (stating that SSI would remain a surviving entity after the merger); Dkt. No. 68-1 ¶ 22 (citing various other publicly available materials).  Indeed, publicly available software licenses for the Accused Software identify EntIT as the licensor.  Dkt. No. 32-15; Dkt. No. 32-16; Dkt. No. 32-17; Dkt. No. 32-18.

---

[2] *See* Dkt. No. 12 at 10 n.3 (pointing out the falsity of Wapp's allegation in the Original Complaint that MF plc was a party to the SDA); Dkt. No. 28 (Proposed FAC) ¶¶ 23, 25 (in which Wapp continued to misrepresent that MF plc was a party to the SDA, despite MF plc's prior correction).

[3] Wapp's SAC acknowledges that the SDA—which was in Wapp's possession at the time of its Original Complaint—reveals that SSI acquired the relevant software business.  Dkt. No. 76 ¶ 22.

Moreover, Wapp's post-filing conduct confirms that the Subsidiary Defendants had no reason to believe that they would have been named but for a mistake.  *Krupski*, 560 U.S. at 554 ("To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity,' a court may consider the conduct.").  For instance, SSI and EntIT filed their declaratory judgment action in Delaware on October 15, 2018, explaining in detail their involvement with the Accused Software.  Dkt. No. 68-1 ¶¶ 17–27.  Also, MF plc filed its motion to dismiss this case on October 17, 2018 (Dkt. No. 12), meaning Wapp could amend its complaint as a matter of right until November 7, 2018.  Fed. R. Civ. P. 15(a)(1)(B).  Yet, despite being indisputably aware of SSI's and EntIT's involvement *and* still having the right to amend, Wapp declined to so amend.  *See Mallinckrodt Med. Inc. v. Nycomed Imaging AS*, No. 4:98-cv-444, 1998 WL 962203, at *5 (E.D. Mo. Nov. 13, 1998) ("Where a plaintiff should have been aware of the proper defendant at the outset of a case, that plaintiff's delay in amending the complaint could appear to the potential defendant as strategy rather than mistake.").  Instead, Wapp continued to insist that MF plc was singly responsible for the Accused Software and alleged acts of infringement, and, as discussed, to assert that "MF plc is an appropriately-named defendant."  *See* § III.A.1, *supra*.  These actions by Wapp further demonstrated to the parties that Wapp had not made any mistake in identity.

Wapp asserts that it would have "no reason" to engage in the "nonsensical tactic" of deliberately suing the wrong party.[4]  However, Wapp has in fact made evident its motivation for pursuing claims against MF plc rather than against its U.S. subsidiaries primarily responsible for the Accused Software:  Wapp publicly hoped to pit MF plc against HPE and thereby gain access to HPE's deeper pockets in the context of this suit.  In particular, Wapp asserted that HPE is

---

[4]  Ex. 1 (Delaware suit, Dkt. No. 16) (Wapp Reply ISO Mot. to Dismiss) at 2–3.

obligated to obtain a license to the Asserted Patents on behalf of MF plc, the ultimate parent in the

Micro Focus family of companies and a party to the Merger Agreement with HPE.  Dkt. No. 68-

4.  For example, Wapp's Original Complaint against MF plc alleged: "Plaintiffs encourage [MF

plc] to request HPE to obtain a license on behalf of [MF plc] prior to the expiration of the 24-

month term."  Dkt. No. 1 ¶ 20.[5]  Similarly, Wapp's complaint in a co-pending case against HPE

alleged:  "Plaintiffs would like [HPE] to take advantage of this opportunity to obtain a license on

behalf of [MF plc] prior to expiration of the 24-month term."  Ex. 2, *Wapp Tech Ltd. P'ship v.*

*Hewlett Packard Enter. Co.*, No. 4:18-cv-468-ALM ("*Wapp v. HPE*"), Dkt. No. 1 ¶ 43.  Wapp

further made this clear when, in response to HPE's motion to stay, it stated:

> Based on HPE's failure to disclose the Patents, HPE has liability for breach of a
> representation in the Merger Agreement . . . . [T]here is potentially no cap on
> HPE's liability to [MF plc] regarding [Wapp's] infringement lawsuit against [MF
> plc] . . . . *HPE is a much larger company by revenue than [MF plc]*.  HPE also
> received billions in value from the sale of the business that sells infringing products
> to [MF plc].

Ex. 3 (*Wapp v. HPE*, Dkt. No. 16) at 8–9 (emphasis added).  These exemplary statements evidence

Wapp's *strategy* to take advantage of MF plc's perceived leverage over HPE and purported breach

of contract claim against HPE, to force HPE, with its perceived deeper pockets, to resolve this case

on MF plc's behalf.  This Court has acknowledged Wapp's efforts to pit MF plc against HPE.  *See*

Ex. 4 (*Wapp v. HPE*, Dkt. No. 18) at 6.  The Supreme Court has held that failed litigation strategies,

made in the face of knowledge of the proper parties, is not a mistake.  *Nelson v. Adams USA, Inc.*,

529 U.S. 460, 467 n.1 (2000) ("Respondent Adams made no such mistake.  It knew of Nelson's

role and existence and, until it moved to amend its pleading, it chose to assert its claim for costs

and fees only against [Nelson's company].").

---

[5]  The alleged obligations to which Wapp refers are from page 34 of a 77-page agreement,
further showing Wapp's sophisticated knowledge of the transaction.  *See* Dkt. No. 68-3 § 2.16.

Thus, Wapp cannot show that the Subsidiary Defendants should have believed that but for a mistake they would have been sued.  Instead, Wapp's "original complaint and [Wapp's] conduct compel the conclusion that the failure to name the prospective defendant[s] in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, [and] the requirements of Rule 15(c)(1)(C)(ii) are not met." *See Krupski*, 560 U.S. at 552; *see also id.* at 549 ("[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.").  A failed legal strategy is not a "mistake" as used by Rule 15(c)(1)(C).  *Tapp v. Gulf Stream Coach, Inc.*, No. 08-1134, 2011 WL 3502023, at *2 (E.D. La. Aug. 10, 2011) ("[I]t is evident that Plaintiff failed to sue Maytag and Whirlpool when she could have, not because of mistaken identity, but rather as part of deliberative and conscious case strategy.  Rule 15(c)(1)(C) does not remedy such decisions."); *Mitts v. Sikorsky Aircraft Corp.*, No. H-10-5164, 2012 WL 12893657, at *4 (S.D. Tex. June 26, 2012) ("Further, a conscious choice to sue one party over another is not a mistake and does not constitute the basis for relation back.") (citing *Sanders–Burns v. City of Plano*, 594 F.3d 366 (5th Cir. 2010)).

The evidence is consistent and clear:  The Subsidiary Defendants should not have known that they would have been named but for a mistake concerning their identity.

### B.     This case should be transferred to the District of Delaware pursuant to the first-to-file rule.

Because the filing date of the SAC cannot relate back to Wapp's Original Complaint, this Court is the second to take possession of the dispute between the parties; respectfully, therefore, this Court should transfer this case to the District of Delaware.

"The Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a

strong preference to avoid duplicative litigation" and allow the first-filed case to proceed.  *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (citing *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976); *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).  Thus, "[u]nder the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."  *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).  Where two cases have substantially overlapping subject matter, the first-filed case is generally the only one that proceeds.  *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398, at *8 (E.D. Tex. Jan. 25, 2017) (allowing Amazon's first-filed EDVa DJ action to proceed).  It is irrelevant that one of the cases is an action for declaratory judgment:  "When the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action."  *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

"When a party moves to transfer under the first-to-file rule, the second-filed court must examine the two pending cases to see if the subject matter 'might substantially overlap.'"  *Brown v. Peco Foods, Inc.*, 4:07CV99-KS-MTP, 2008 WL 4145428, at *2 (S.D. Miss. Feb. 25, 2008) (quoting *Cadle*, 174 F.3d at 606).  "If the likelihood of substantial overlap exists, then 'the proper course of action [is] for the [second-filed] court to transfer the case' to the first-filed court."  *Id.*

### 1.      This is the second-filed of two substantially overlapping patent suits.

As this Court already found, the issues in this suit and the Delaware suit substantially overlap.  Dkt. No. 67 at 13–14; Ex. 4 (*Wapp v. HPE*, Dkt. No. 18) at 5.  However, because the Delaware suit was filed eight months prior to the SAC and the SAC does not relate back under

Rule 15, this is the second-filed suit.  *See Mallinckrodt*, 1998 WL 962203, at *5; *Glob. Equity*, 2017 WL 365398, at *8 ("[T]he Court finds that GEMSA's amended complaints are not first-filed because they do not 'relate back' to the originally filed June 14, 2016 complaints . . . .").

*Mallinckrodt* is instructive.  There, the patentee filed an infringement suit in the Eastern District of Missouri in March 1998.  *Mallinckrodt*, 1998 WL 962203, at *1.  In April 1998, the alleged infringer's subsidiary filed a declaratory judgment action against the patentee in the District of New Jersey.  *Id.*  Then, in August 1998, the patentee amended its Missouri complaint to add the subsidiary as a defendant.  *Id.*  The Missouri court subsequently held that it lacked personal jurisdiction over the originally named parent corporation.  *Id.* at *3.  The remaining subsidiary corporation moved to dismiss, transfer, or stay the Missouri case under the first-to-file rule, arguing that the patentee's amended complaint in Missouri did not relate back to the original complaint, and therefore the New Jersey case was the first filed.  *Id.*  The court agreed with the subsidiary corporation (and, accordingly, transferred the case to the District of New Jersey) in part because "Mallinckrodt waited three months after Nycomed filed its declaratory judgment action to add Nycomed as a defendant in its amended complaint."  *Id.* at *5.

The facts are materially the same here.  The sole, original defendant in this suit (MF plc) has been dismissed for lack of personal jurisdiction, the filing date of the SAC does not relate back to the Original Complaint, and the Delaware suit pre-dates the SAC.  Thus, transfer is appropriate.

### 2.      The Bank Actions do not affect the transfer analysis.

The existence of the Bank Actions does not affect transfer as to the Subsidiary Defendants.  As briefed in the Bank Actions, Wapp's complaints demonstrate that the Bank Actions are customer suits.  *See* Ex. 5 (*Wapp v. BoA*, Dkt. No. 12) at 4.[6]  Thus, the customer-suit exception

---

[6]  The same applies in the other Bank Action, *Wapp v. Wells Fargo*.

applies to the Bank Actions, and the Delaware suit should be given priority.  *See In re Google*, 588 F. App'x at 990 n.2; *Glob. Equity*, 2017 WL 365398, at *8 (giving preference to a declaratory judgment action in another district because, under *Google*, "first-filed customer suits are not to be given deference under the first-to-file rule").

This Court's recent finding that it is too early to determine whether each bank defendant is "truly a customer or a manufacturer" (*e.g.*, Ex. 6 (*Wapp v. BoA*, Dkt. No. 16) at 6) does not affect this outcome, because transfer of this case is appropriate either way.  To the extent Wapp's infringement contentions against the banks are independent of the banks' use of the Subsidiary Defendants' products, then the Bank Actions arise out of different controversies than the controversy at issue in this and the Delaware suit, and therefore should not factor into the first-to-file analysis.  *See In re Transaction Sys. Archs., Inc.*, 232 F.3d 905 (Fed. Cir. 2000) (unpublished) (upholding the district court's determination that the first-to-file doctrine was inapplicable where two suits involved the same asserted patent but different accused products).  On the other hand, to the extent Wapp's infringement allegations against the banks depend on their use of the Subsidiary Defendants' Accused Software—as has been alleged in the complaints in the Bank Actions—then the customer-suit exception applies *even if* Wapp winds up alleging that the banks use the Accused Software to develop their own products that independently infringe the claims of the Asserted Patents.  *See In re Google*, 588 F. App'x at 990–91 (holding on mandamus review that the customer-suit doctrine applied even where a customer used the manufacturer's accused product to create its own, different, allegedly infringing product); *Glob. Equity*, 2017 WL 365398, at *10 (holding that, in view of *Google*, the customer suit exception applied even though the plaintiff alleged that the customer defendants went beyond simply using the manufacturer's accused product).  The customer-suit exception is to be applied even in this scenario because "substantial

savings of litigation resources can be expected" where the manufacturer suit may "at least advanc[e] the 'major premises' being litigated in the [customer suits]." *In re Google*, 588 F. App'x at 991; *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014).

Thus, no matter what allegations Wapp may make in the Bank Actions, this case should be transferred to Delaware.

### 3. The Delaware court, as the first-filed court, is the proper forum to apply the first-to-file analysis.

As this Court has recognized, the first-to-file rule "not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." Dkt. No. 75 at 19 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)). The court with the first-filed action is the proper court to decide whether the second suit should proceed. *Sutter*, 125 F.3d at 920. Here, as explained, the District of Delaware is the court with the first-filed action. Thus, this Court should transfer this case to Delaware, so that the Honorable Judge Andrews can determine how, if it all, this second-filed suit should proceed. *See Cadle*, 174 F.3d at 605–06 (it is the first-filed court that must "resolve the question of whether both should be allowed to proceed").

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find that the filing date of Wapp's Second Amended Complaint (Dkt. No. 76) does not relate back the Original Complaint, and accordingly transfer this action to the District of Delaware.[7]

---

[7] Alternatively, Defendants respectfully request that the Court stay this suit in favor of the Delaware suit, including that court's resolution any first-to-file rule motions that Wapp may bring in Delaware.

Dated:  September 13, 2019    By:   */s/ Mark N. Reiter*
                                       Mark N. Reiter
                                       Lead Attorney
Texas State Bar No. 16759900
mreiter@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201-6912
Telephone:  214.698.3360
Facsimile:  214.571.2907

Neema Jalali
njalali@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:  415.393.8200
Facsimile:  415.374.8409

Jordan Bekier
jbekier@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Mark N. Reiter*
Mark N. Reiter

## <u>CERTIFICATE OF CONFERENCE</u>

On September 16, 2019, counsel for the Subsidiary Defendants, Mark N. Reiter, conferred by phone with Henrik Parker, counsel for Plaintiffs, who stated Plaintiffs oppose the motion.

*/s/ Mark N. Reiter*
Mark N. Reiter