# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP § <br> and WAPP TECH CORP., § <br> § <br> v. § <br> § <br> SEATTLE SPINCO, INC., et al., § | Civil Action No.  4:18-cv-00469 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Oral Motion to Disqualify Plaintiffs' Expert Dr. Malek. Having considered the letter briefing and oral arguments, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

On July 2, 2018, Plaintiffs Wapp Tech Limited Partnership and Wapp Tech. Corp. sued Micro Focus International, Seattle SpinCo Inc., EntIT Software LLC, EntCo Interactive (Israel) Ltd., and Micro Focus (US) Inc. for patent infringement.

This case is governed by a Protective Order, which provides that a party may object to an expert "on the basis, e.g., . . . that the expert is or has been involved in the competitive decision-making of any party." (Dkt. #188 at p. 5).

On October 29, 2020, the Court held a hearing for the parties' various discovery disputes. One of those disputes was over whether Plaintiffs' expert, Dr. Malek, should be disqualified.  Dr. Malek was retained by Hewlett Packard ("HP") in December 2015 regarding *YYZ LLC v. Hewlett Packard Company*, 1:13-CV-00136-SLR (D. Del).  Dr. Malek worked 55 hours over a 10-day period as a technical consultant and recalls "reviewing patents" that are not being asserted in this case.  Dr. Malek "does not recall whether he received any confidential information" but if he had,

"he no longer has it" or remembers it. HP was Micro Focus's predecessor-in-interest. Dr. Malek has now been retained by Plaintiffs, opposite Micro Focus.

The parties engaged in further discussions on this topic. On November 2, Defendants submitted a letter brief and correspondence with Plaintiffs' counsel, and the Court held a second hearing.

## LEGAL STANDARD

Federal courts have the inherent power to disqualify experts, although it is rarely appropriate. *Koch Refining Company v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir. 1996).[1] The Fifth Circuit has articulated a two-part test for disqualifying experts who have not clearly switched sides: (1) Was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?; and (2) Was any confidential or privileged information disclosed by the first party to the expert? *Id.* Only if the answers to both questions are affirmative should the witness be disqualified. *Id.* In reaching a decision, the Fifth Circuit has stated that courts should also consider whether the public interest weighs in favor of disqualifying the expert. *Id.* The movant bears the burden of proving that disqualification is warranted. *Id.*

## ANALYSIS

1. **Whether a confidential relationship existed?**

A confidential relationship exists when the record supports a longstanding series of interactions, which tend to "create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Id.* at 1182 (citing *Marvin Lumber Co. v. Norton*, 113 F.R.D. 588, 591 (D. Minn. 1986)). In contrast, there is no confidential

---

[1] In patent cases, the law of the regional circuit governs the issue of disqualification of an expert witness. *See In re Pioneer Hi–Bred Int'l, Inc.,* 238 F.3d 1370, 1374 (Fed. Cir. 2001).

relationship when "the evidence supports the finding that the meeting was a type of informal consultation rather than the commencement of a long-term relationship." *Id.* (citing *Mayer v. Dell*, 139 F.R.D. 1, 3-4 (D.D.C. 1991)).

HP retained Dr. Malek in December 2014 to be a technology consultant in a patent infringement suit. Dr. Malek's relationship with HP was brief: he reviewed patents for 55 hours over the course of 10 days. He did not produce an expert report or sit for a deposition, demonstrating his low level of involvement. While 55 hours is certainly more than an "informal consultation," it is a tiny fraction of the hours billed by experts in patent cases. *See id.* Yet, even though Dr. Malek's relationship with HP was brief, it was still a confidential one. Dr. Malek's engagement agreement with HP is confidential and he will not disclose it to anyone other than HP. Because Dr. Malek must keep certain information private between him and HP, Dr. Malek necessarily had a confidential relationship with HP.

### 2. Whether the expert received confidential information?

The Court must next determine whether Dr. Malek received, or had reasonable access to, confidential information. *See id.* Such information would include "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Id.* (quoting *Mayer*, 139 F.R.D. at 4). "However, purely technical information is not confidential." *Id.* (quoting *Nikkal Ind., Ltd. v. Salton*, 689 F.Supp. 187, 191-92 (S.D.N.Y.1988)).

In the *YYZ* case, Dr. Malek "reviewed patents" for HP as a technical consultant. There is no evidence that Dr. Malek discussed litigation strategy with HP that would give Dr. Malek unique knowledge of HP's "modus operandi, patterns of operations, decision-making process, and the

like." *Id.* There is also no evidence that HP explained its "entire theory of the case" or "trial tactics" to Dr. Malek; in fact, Dr. Malek's involvement was before claim construction and thus relatively early in the case. *See id.* Defendants argue that Dr. Malek should be disqualified because he does not unequivocally deny receiving confidential information, but it is Defendants' burden to disqualify Dr. Malek, not Dr. Malek's burden to exonerate himself. *See id.* Because Dr. Malek provided "purely technical information" by reviewing patents, he did not receive confidential information. *See id.*

Even if Dr. Malek received confidential information, there is no evidence that is now relevant. Plaintiffs engaged Dr. Malek as an expert in a case with different patents, different technology, and different products from the *YYZ* case. The *YYZ* case involved U.S. Patent Nos. 7,062,749 and 7,603,674, neither of which are asserted here. The *YYZ* case involved technology for measuring, monitoring, and tracking enterprise communications and processes, while here the disputed technology involves testing mobile applications. And lastly, the *YYZ* case involved different accused products. Defendants rely on *Mobile Telecommunications* to argue the accused product here is a later iteration of the accused product in *YYZ* and thus is essentially the same product. *Mobile Telecommunications Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:13-CV-947-JRG-RSP, 2015 WL 11117313, at *1 (E.D. Tex. July 22, 2015). But this case is distinguishable because there the expert was disqualified because he previously consulted on "the same" devices. *See id.* In contrast, Dr. Malek's consulting work for HP is only tenuously connected to the presently accused products. In the *YYZ* case, Dr. Malek consulted on HP Business Availability Center. This later became HP Business Service Management, which later became HP Application Performance Management. This final iteration uses "some" of the same backend

components as an accused product (AppPulse) and is "integrated" with another (LoadRunner). This is too attenuated to be categorized as an expert testifying on "the same devices." *See id.*

*YYZ* was 6 years ago—an eon in software development. Whatever information Dr. Malek obtained during a two-week period six years ago is likely outdated and admittedly forgotten. This is not a case where an expert consulted for opposing parties "nearly overlapping" in time on the "same devices"; Dr. Malek consulted for different companies in different litigations on different matters. *See id.* Defendants have not established this is the "rare" case warranting disqualification. *See Koch*, 85 F.3d 1178 at 1181.

As the Court finds that Dr. Malek did not receive confidential information—and even if he did, it was not relevant—the Court need not consider the public interest.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Oral Motion to Disqualify Plaintiffs' Expert Dr. Malek is hereby **DENIED**.

**SIGNED this 4th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE