# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP., <br><br> Plaintiffs, <br> v. <br><br> SEATTLE SPINCO, INC., ET AL., <br><br> Defendants. | Case No. 4:18-cv-00469-ALM <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION (DKT. 245)
TO MOTION TO STRIKE
"SECOND UPDATED … INFRINGEMENT CONTENTIONS …" (DKT. 237)**

# TABLE OF CONTENTS

A. No reasonable inquiry was conducted—unless the protective order was violated. .................. 1

B. Plaintiffs needed leave for their 2020 contentions, which they do not have. ........................... 2

    1. The Court's July 2 order did not give plaintiffs carte blanche. .......................................... 2

    2. Plaintiffs' 2020 contentions are not authorized by P.R. 3-1(g). ........................................ 2

        a. The 2020 contentions do more than specifically identify source code. ........................ 2

        b. The 2020 contentions are not timely under P.R. 3-1(g). ............................................... 3

C. The 2020 contentions do not meet the specificity requirements of P.R. 3-1(b) and (c). ........... 4

D. The 2020 contentions do not state priority dates. .................................................................... 4

E. Defendants' prejudice is manifest. ............................................................................................ 5

# TABLE OF AUTHORITIES

**Rules**

Patent Rule 2-3 ............................................................................................................................... 1

Patent Rule 3-1 ...................................................................................................................... 2, 3, 4, 5

Patent Rule 3-6 ............................................................................................................................... 1

Days after making their first appearance, plaintiffs' fourth set of lawyers served "Second Updated" infringement contentions to replace those served in 2019. Defendants move to strike the 2020 contentions for failure to: (1) conduct a reasonable inquiry, as required by P.R. 2-3; (2) obtain leave, as required by P.R. 3-6(b); (3) meet the specificity requirements of P.R. 3-1(b) and 3-1(c); and (4) state priority dates, as required by P.R. 3-1(e). (Dkt. 237.)

**A.     No reasonable inquiry was conducted—unless the protective order was violated.**

By signing the 2020 contentions, Robert Kramer of Feinberg Day certified that he did a reasonable inquiry into their completeness and correctness. P.R. 2-3. No such inquiry could have been done between Friday, October 16, when Kramer appeared, and Monday, October 19. (*See* Dkt. 237 at 6–7.) So unless the protective order was violated, the certification is false.

Plaintiffs claim that Kramer and his firm conducted a two-part pre-signing inquiry. First, the Feinberg Day lawyers "performed a thorough analysis and investigation" from "March–May 2020," based on "pleadings, patents-in-suit, non-confidential infringement contentions, and other public information regarding the accused products." (Dkt. 245 at 6–7.) Second:

> [A]fter appearing in the case, the Feinberg Day team (including *four attorneys with technical degrees*) worked with a source code expert … and Wapp's former counsel to … finalize the Second Updated Contentions …served on October 19.

(Dkt. 245 at 7, italics added.) The only Feinberg Day lawyers who had appeared by October 19 were Kramer, Elizabeth Day, and Russell Tonkovich. (Dkts. 225–27.) Tonkovich has a technical degree—in biochemistry, not anything to do with computers—but Kramer and Day do not.[1] The other Feinberg Day lawyers with technical degrees are David Alberti (electrical engineering), Sal Lim (electrical engineering), and Sven Raz (environmental engineering)—who were not counsel

---

[1] https://feinday.com/ourteam/partners/russell-tonkovich/; https://feinday.com/ourteam/partners/robert-kramer/; https://feinday.com/ourteam/partners/elizabeth-day/; *see also* https://feinday.com/ourteam/partners/david-alberti/; https://feinday.com/ourteam/partners/sal-lim/; https://feinday.com/ourteam/of-counsel/sven-raz/.

1

of record until October 22 and October 28, (Dkts. 231, 233, 236).

The protective order allows protected material to be shared with "[o]utside counsel *of record* in this action," (Dkt. 188, § (5)(a), italics added)—*not* with attorneys who have yet to make an appearance. If three lawyers not then of record "worked with a source code expert who had reviewed the source code and Wapp's former counsel to fully understand and finalize the Second Updated Contentions" then the protective order was violated—by "former counsel," the three Feinberg Day lawyers who had already appeared, and the "source code expert."

**B.     Plaintiffs needed leave for their 2020 contentions, which they do not have.**

**1.     The Court's July 2 order did not give plaintiffs carte blanche.**

Plaintiffs argue that their 2020 contentions were pre-authorized by an order the Court entered on July 2, 2020. (Dkt. 245 at 7–8.) That order plainly contemplated *only* that the plaintiffs might, "after receiving the relevant source code," amend their contentions *in accordance with P.R. 3-1(g)*. (*See* Dkt. 206 at 4.) Under that rule, "[a]fter receipt of the source code … the party is permitted 60 days to supplement … to identify, with specificity, the source code … that allegedly satisfies the software claim elements." The Court's July 2 order did not give plaintiffs leave to amend without regard to the P.R. 3-1(g) limitations on scope and timing.

**2.     Plaintiffs' 2020 contentions are not authorized by P.R. 3-1(g).**

**a.     The 2020 contentions do more than specifically identify source code.**

Patent Rule 3-1(g) narrowly allows as follows:

> After receipt of the source code … the party [claiming patent infringement] is permitted 60 days to supplement … *to identify, with specificity, the source code … that allegedly satisfies the software claim elements*. The party … shall *identify* … element-by-element … for each asserted claim, *what source code … allegedly satisfies the software limitations* of the asserted claim elements.

P.R. 3-1(g) (italics added). But instead of merely "identify[ing] … source code" "with

specificity," the 2020 contentions broadly give what plaintiffs call "a more complete picture" of "why the accused software products infringe." (Dkt. 245 at 11.) The rule does not authorize that.

Plaintiffs try to rationalize by saying most of their 400+ new pages "is consumed by pictures." (Dkt. 11.) But the rule does not authorize new *pictures*—drawn *not* from source code but from product literature, which plaintiffs always had or defendants produced long ago,[2] (Dkt. 237 at 8 n. 4)—either. And the 2020 contentions also added 85,000+ *words*. (Dkt. 237-7.)[3]

### b. The 2020 contentions are not timely under P.R. 3-1(g).

The 60-day deadline to supplement under P.R. 3-1(g) began running in December 2019, when defendants produced source code for most of the products accused by the 2020 contentions; or on May 7, 2020, when defendants produced code for the remaining accused product; or on July 10, when plaintiffs finally began inspecting the code. Therefore the 2020 contentions would have been untimely, even if they otherwise complied with P.R. 3-1(g).

According to plaintiffs, because defendants "produced source code on October 7, 2020," and plaintiffs have now (belatedly) asked for "source code for … Network Capture and Network Catcher," P.R. 3-1(g)'s 60-day period *still* "has not been properly triggered." (Dkt. 245 at 10.) That cannot be right. For example, defendants' October 7 code production was for newly released versions of accused products. Plaintiffs did not even know about the new releases when defendants made that production. Such conduct should be incentivized. But restarting the 60-day

---

[2] Plaintiffs complain that defendants "never identify any specific document that they object to in the contentions." (Dkt. 245 at 10.) But defendants specifically identified each and every such document, by bates number. (*See* Dkt. 237 at 8 n. 4; Dkt. 237-1, ¶ 14.)

[3] Similarly, defendants did not say "the 2020 contentions accuse new products." (*Cf.* Dkt. 245.) They said the contentions make new accusations—i.e., they accuse products of infringing claims they were not previously accused of infringing—which is true. (*See* Dkt. 237 at 8–9.) Plaintiffs' contrary argument misreads their own cover pleading, (*see* Dkt. 245 at 12)—and in any event P.R. 3-1(c) requires infringement contentions to be *charted*, not just conclusorily alleged.

countdown for all *previously produced code*, every time defendants produce (or plaintiffs request) *additional* code, would be the end of such cooperation.

Plaintiffs caricature defendants' position as: "supplementation to add a specific source code file must be made within 60 days of the production of that *specific source code file*." (Dkt. 245 at 8.) That is not defendants' argument. But once a *set* of code for an accused instrumentality is produced, the 60 days should begin to run *as to that set*. Thus contentions served on October 22 (or 19) are untimely, insofar as they rest on code sets produced by December 2019 or May 7.

**C.     The 2020 contentions do not meet the specificity requirements of P.R. 3-1(b) and (c).**

When defendants filed their motion, they thought the 2020 contentions accused unknown combinations of six products, plus (perhaps) unspecified "UFT products." Now, from plaintiffs' opposition, defendants understand that "UFT products" is meant to refer to a specific product. So the 2020 contentions accuse seven products (not six), and/or "any combination" thereof. (Dkt. 237-3 at 3.) That increases the number of *possibly* accused instrumentalities from 63 to 127.[4] The 2020 contentions do not say which *are* accused, and they also use improper combination charts.

Plaintiffs say the resulting confusion will be cleared up by a forthcoming "third updated" set of contentions. But plaintiffs cannot save a fatally defective set of contentions by promising to seek leave to serve a future set that fixes the problems. And if plaintiffs intend to seek leave to serve proper contentions then they should have withdrawn the fatally defective 2020 contentions, as defendants invited them to do, rather than force defendants and the Court to deal with them.

**D.     The 2020 contentions do not state priority dates.**

Plaintiffs' opposition seems to allege June 10, 2005 as the priority date for each asserted

---

[4] As plaintiffs' four attorneys with technical degrees presumably know, the formula to calculate how many combinations of $r$ objects may be formed from a set of $n$ is: $n!/(r!(n-r)!)$. That formula was used to calculate the numbers given above.

claim. (Dkt. 245 at 13.) That is not stated in the 2020 contentions but if plaintiffs are now adopting it as their P.R. 3-1(e) contention then *this* issue, at least, is finally resolved.

**E.     Defendants' prejudice is manifest.**

Plaintiffs should have served compliant infringement contentions early on, so that they could guide this litigation. That is one of the essential functions of the patent disclosure rules. Conversely, the prejudice to defendants from still not knowing plaintiffs' infringement contentions, less than a fortnight before opening expert reports are due, is manifest.

Plaintiffs try to discount the prejudice as a byproduct of *defendants'* "discovery delays." But although *plaintiffs* have needed repeated continuances to rescue them from their pervasive failures to work toward their own disclosure obligations, and otherwise diligently prosecute their claims, defendants *have not* delayed.[5] Nor could defendants' alleged delays justify plaintiffs' tardiness: other than source code citations, all the other new matter in the 2020 contentions comes from material that plaintiffs had long before defendants made their August 18 source code production, and from "a thorough analysis and investigation" the Feinberg Day lawyers did in "March–May 2020," based on "pleadings, patents-in-suit, non-confidential infringement contentions, and other public information regarding the accused products." (Dkt. 245 at 6–7.)

The 2020 contentions should be stricken.

---

[5] Plaintiffs allege two delays. Mostly, they allege an "8-month delay in producing relevant source code," (Dkt. 245 at 14), which never happened: in December 2019, plaintiffs served contentions accusing certain products; a week later, defendants produced code for those products; plaintiffs moved to compel discovery for unaccused products, which was granted on April 23, 2020, (Dkt. 175); on May 7, defendants produced code for the additional products; plaintiffs began reviewing code on July 10; on July 16, they asked for additional versions; defendants suggested instead a stipulation that the version already produced was representative; plaintiffs ultimately rejected that stipulation and a week later, the defendants produced the other versions. No delay. Plaintiffs also say defendants delayed production of a document that supposedly "shows how Micro Focus and Bank of America use UFT and Network Virtualization in an infringing manner," (Dkt. 245 at 3); but that document contains *no* relevant information not already disclosed elsewhere.

| | |
|---|---|
| Dated: November 10, 2020 | Respectfully submitted, |

By: */s/ L. Rex Sears*
L. Rex Sears (Admitted *Pro Hac Vice*)
Lead Attorney
Utah State Bar No. 8548
Jared J. Braithwaite (Admitted *Pro Hac Vice*)
Utah State Bar No. 12455
Alexis K. Juergens (Admitted *Pro Hac Vice*)
Utah State Bar No. 16861
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1361
rsears@mabr.com
jbraithwaite@mabr.com
ajuergens@mabr.com

Barry K. Shelton
Texas State Bar No. 24055029
Bradley D. Coburn
Texas State Bar No. 24036377
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, Texas 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com

Melissa Smith
GILLAM & SMITH
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served via the Court's CM/ECF system on November 10, 2020 on all counsel of record who consent to electronic service per Local Rule CV-5(a)(3) or, otherwise, as required by local and federal rules.

/s/ *L. Rex Sears*