# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP.,<br><br>　　　　Plaintiffs,<br>　v.<br><br>SEATTLE SPINCO, INC., ET AL.,<br><br>　　　　Defendants. | **FILED UNDER SEAL**<br><br>Case No. 4:18-cv-00469-ALM<br><br>**JURY TRIAL DEMANDED** |

# DEFENDANTS' MOTION TO EXCLUDE OR LIMIT TESTIMONY FROM PLAINTIFFS' DAMAGES EXPERT, ROY WEINSTEIN

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ADMISSIBILITY STANDARDS ................................................................................. 2

III. ADDITIONAL BACKGROUND ................................................................................. 3

IV.  ARGUMENT ................................................................................................................. 4

    A. Weinstein's royalty-base opinion violates the entire market value rule (EMVR). ........... 4

        1. The requirements of the entire market value rule are not met here. ............................ 4

        2. Weinstein nonetheless bases damages on the entire market value. ............................ 5

            a. Weinstein improperly included all post-bundling LoadRunner revenues in his royalty base. ....................................................................................................... 5

            b. Weinstein should not have used the entire price paid as his royalty base. ............. 6

    B. Gross profit would not have been a reliable measure of realized value, at the hypothetical negotiation. ........................................................................................................ 7

    C. The Weinstein–Malek apportionment is unreliable. .......................................................... 8

    D. Using return on invested capital (ROIC) to determine the bargaining split is another one-size-fits-all rule of thumb that cannot survive appellate review. .................. 8

    E. Weinstein should not be allowed to channel inadmissible hearsay or irrelevant promotional materials, or to give legal opinions. ............................................................ 10

V.   CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fidelity Nat. Title Ins. v. Doubletree Partners*,
 866 F. Supp. 2d 604 (E.D. Tex. 2011) ..................................................................................... 2

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
 No. 220CV00050JRGRSP, 2020 WL 3288076 (E.D. Tex. June 18, 2020) ......................... 2, 8

*Knight v. Kirby Inland Marine Inc.*,
 482 F.3d 347 (5th Cir. 2007) ........................................................................................ 2, 8, 10

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
 694 F.3d 51 (Fed. Cir. 2012) ................................................................................................ 4, 5

*Limelight Networks, Inc. v. XO Communications, LLC*,
 No. 3:15-CV-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) ................................... 9, 10

*Little v. Technical Specialty Prods., LLC*,
 940 F. Supp. 2d 460 (E.D. Tex. 2013) ..................................................................................... 2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 904 F.3d 965 (Fed. Cir. 2018) ......................................................................................... 4, 6, 7

*Rite-Hite Corp. v. Kelley Co.*,
 56 F.3d 1538 (Fed. Cir. 1995) ................................................................................................. 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011) ....................................................................................... 4, 5, 7

*VirnetX Inc. v. Cisco Sys., Inc.*,
 No. 6:10-CV-417, 2013 WL 789288 (E.D. Tex. Mar. 1, 2013) .............................................. 7

*VirnetX, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014) ........................................................................................... 4, 9

**Statutes**

35 U.S.C. § 284 ............................................................................................................................. 5

**Other Authorities**

BLACK'S LAW DICTIONARY (6th ed. 1990) ................................................................................... 7

FED. R. EVID. 402 .................................................................................................................... 1, 10

FED. R. EVID. 403 ............................................................................................................................1, 5

FED. R. EVID. 702 ............................................................................................................................1, 2

FED. R. EVID. 703 ...............................................................................................................................2

FED. R. EVID. 802 ...............................................................................................................................1

iii

Defendants ("Micro Focus") move to exclude or limit the testimony of Roy Weinstein, the damages expert engaged by plaintiffs ("Wapp"), under FED. R. EVID. 402, 403, 702, and 802.

## I. INTRODUCTION

Weinstein's opinion is that in a hypothetical negotiation conducted in or around December 2014, when the first asserted patent issued, the parties would have agreed to a ▮▮ lump-sum royalty. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In other words, Weinstein's opinion is that in the hypothetical negotiation, Micro Focus (or its predecessor[1]) would have been so overawed by Wapp and Wapp's patents that it would have agreed to continue making and selling its products at a loss.

Weinstein arrives at his damages figure in four steps. First, he aggregates *all* net revenues from the accused products ▮▮▮▮ Then he determines profit by applying Micro Focus's *gross* margin ▮▮▮ Then he applies an apportionment factor ▮▮▮ obtained from Wapp's technical expert, Sam Malek. Finally, he splits the apportioned gross profits, ▮▮ to Wapp and ▮▮ to Micro Focus. Each step builds on and compounds the unreliability of the one before.

First, by basing his calculation on Micro Focus's total net revenues from the accused products, Weinstein has violated the entire market value rule. Second, by using *gross* rather than *operating* profit margin, Weinstein fails to account for most of Micro Focus's costs and thus dramatically overstates the "value realized by Micro Focus." Third, Weinstein's borrowed apportionment factor opinion is not reliable, as shown in a companion motion directed to Malek. Fourth, Weinstein determines the profit split by using a "rule of thumb" shortcut, of the sort that

---

[1] In 2014, the accused products were owned by Hewlett-Packard Company ("HP"), which then split into two entities: HP Inc. and Hewlett Packard Enterprise Company ("HPE"). HPE retained HP's software business unit, which was later sold to Micro Focus.

the Federal Circuit has repeatedly rejected.

Even if Weinstein were permitted to offer some or all of his calculations, other opinions should be excluded for other reasons, as explained below.

## II. ADMISSIBILITY STANDARDS

An expert's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." FED. R. EVID. 702(b), (c). Moreover, the expert must "reliably appl[y] the principles and methods to the facts of the case." FED. R. EVID. 702(d). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et. alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

The Court "must act as a gatekeeper and make a preliminary assessment of whether the admissibility requirements are met before allowing an expert to testify." *Fidelity Nat. Title Ins. v. Doubletree Partners*, 866 F. Supp. 2d 604, 614 (E.D. Tex. 2011). As the proponent of Weinstein's testimony, Wapp "has the burden to prove by a preponderance of the evidence" that his testimony meets those requirements. *Little v. Technical Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467 (E.D. Tex. 2013).

"Experts cannot offer testimony regarding … what the applicable law means, because that is a function of the Court." *Little*, 940 F. Supp. 2d at 467–68. "In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument." *Id.* at 468.

Finally, even though an expert may sometimes properly rely on evidence that is not itself admissible, FED. R. EVID. 703, "[a]n expert is not permitted to act as a mere conduit to place inadmissible hearsay … on the record." *See Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 220CV00050JRGRSP, 2020 WL 3288076, at *3 (E.D. Tex. June 18, 2020).

### III. ADDITIONAL BACKGROUND

There are five accused products: UFT Mobile, Network Virtualization (NV), and three versions of LoadRunner. LoadRunner accounts for ▮▮▮ of the claimed damages.

LoadRunner primarily tests back-end server infrastructure by simulating large numbers of virtual users. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

LoadRunner has three components: Generator, Controller, and Analysis. The Generator, also known as VuGen, is used to generate "scripts" of the actions that will be ascribed to the virtual users. The Controller is used to run a scenario in which virtual users execute the scripts created with VuGen. Analysis reports results from the test scenario run by the Controller.

VuGen can be used to generate many different types of scripts, using any of the 37 separate scripting protocols. Analysis can be configured to report many different types of information, including information displayed through at least 82 available graphs.

Plaintiffs accuse: (1) LoadRunner, when used with the TruClient – Mobile Web scripting protocol and NV enabled, and with the throughput graph selected; and (2) LoadRunner combined with UFT Mobile, when (a) a physical mobile device (not an emulated mobile device) is connected to the UFT Mobile server, and (b) LoadRunner is used with the TruClient – Native Mobile scripting protocol, NV is enabled, and the CPU utilization, percent memory used, and free memory graphs (for the connected mobile device) are selected.

LoadRunner and NV date back to the 1990s. But the accused product configurations and combinations were not available in LoadRunner until 2014.

The accused products were originally created by separate companies. Mercury Interactive

3

created LoadRunner in 1993; Shunra Software created its WAN Emulator, later renamed Network Virtualization, in 1998. Shunra marketed and sold NV to LoadRunner customers both directly and through Mercury, and later through HP. HP acquired LoadRunner from Mercury in 2006 and NV from Shunra in 2014; also in 2014, HP created Mobile Center, later renamed UFT Mobile. As a result of the HP split, HPE acquired the HP software business unit, including the Accused Products, which Micro Focus acquired from HPE in 2017.

## IV. ARGUMENT

### A. Weinstein's royalty-base opinion violates the entire market value rule (EMVR).

#### 1. The requirements of the entire market value rule are not met here.

"The entire market value rule allows … damages based on the entire market value of the accused product only where the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995)). "It is not enough to merely show that the [accused feature] is viewed as valuable, important, or even essential to the use of the [accused product]," or even that without the accused feature, the accused product "would be commercially unviable." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Instead, damages based on "the entire market value … is appropriate only when the patented feature is the sole driver of customer demand or substantially creates the value of the [unpatented] component parts." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018).

Where the "strict requirements limiting the entire market value exception," *see VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014), are not met, evidence of the accused infringer's total revenues from the accused products should not even be admitted into

4

evidence because its disclosure "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue," *Uniloc*, 632 F.3d at 1320; *see also* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice …").

> Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is "adequate to compensate for the infringement."

*LaserDynamics*, 694 F.3d at 68 (quoting 35 U.S.C. § 284).

Here, Wapp does not claim to have met this high standard. Nor could it: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### 2.  **Weinstein nonetheless bases damages on the entire market value.**

Weinstein violates the EMVR in two ways. First, he improperly includes in his royalty base all LoadRunner revenues, from the time that LoadRunner began to be bundled with NV, instead of excluding revenues from customers whose bundled access to NV would have played no role in purchasing decisions. Second, his royalty base is based on the entire price paid for LoadRunner (and the other accused products) rather than any apportioned amount.

#### a.  **Weinstein improperly included all post-bundling LoadRunner revenues in his royalty base.**

Weinstein posits December 2014 as the date of a hypothetical negotiation between Wapp and Micro Focus. Sometime between December 2014 and the present, there was a change in how

---

[2] In deposition, Wapp's technical expert said infringement is not limited to features added in 2014. As shown elsewhere, if he's right then the accused products anticipate the asserted claims.

NV became available to LoadRunner customers. There is a dispute over *when* that happened: Weinstein says it happened in 2015; really, it happened in 2018. But everyone agrees that as of December 2014, NV required a separate purchase; and at some point thereafter (2015 or 2018), NV became available to LoadRunner customers without a separate NV purchase. Everyone also agrees that Wapp's infringement theory requires LoadRunner *and* NV. Finally, everyone agrees that therefore, from December 2014 until the change, LoadRunner revenues from customers who did not also purchase NV should be excluded from the royalty base.

Prior to the change, revenues from LoadRunner customers who also purchased NV accounted for anywhere from ▬ of total LoadRunner revenues, depending on the year. But Weinstein's calculation captures *all* post-change LoadRunner revenues. That is: ▬



That cannot be squared with the EMVR.

Because the EMVR does not allow Weinstein to include all post-bundling LoadRunner revenues in his royalty base, he should not be permitted to testify to those revenues. And because his damages calculation is based on those revenues, it should be excluded.

        **b.**     **Weinstein should not have used the entire price paid as his royalty base.**

Weinstein's entire royalty base, both pre- and post-bundling, suffers from a further EMVR problem. Specifically, Weinstein includes in his royalty base the entire amount paid by LoadRunner's customers, instead of some amount tied to the accused features.

Wapp will say that Weinstein then applies an apportionment factor to those revenues. But as another defendant successfully argued in another Weinstein case, "this math trick is

6

indistinguishable from simply applying a lower royalty rate to the entire market value of the accused products." *See VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-CV-417, 2013 WL 789288, at *2 (E.D. Tex. Mar. 1, 2013). That is: multiplying total revenues by an apportionment factor and then a royalty rate is the same as applying a lower royalty rate directly to total revenues. Absent the required showing that "the patented feature is the sole driver of customer demand," both violate the EMVR. *See Power Integrations*, 904 F.3d at 979.

Weinstein should not be allowed to "skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue," *see Uniloc*, 632 F.3d at 1320, by first testifying to total sales revenue and only then, after the harm is done, applying an apportionment factor. *See VirnetX*, 2013 WL 789288, at *2 ("This apportionment factor is a poor substitute for the type of analysis one should undertake when parsing an alleged infringer's profits for patented versus unpatented features."). He should instead have done the *real* work of valuing what the accused features contribute, and built his royalty base around that.

**B.     Gross profit would not have been a reliable measure of realized value, at the hypothetical negotiation.**

Weinstein's hypothetical negotiation model assumes that the parties would agree to a "bargaining split" of "profits attributable to the Patents-in-Suit." (Expert Report of Roy Weinstein, Sears Decl., Exh. A, ¶ 134.) To calculate those profits, he first sums sales revenues, as described above; then multiplies by *gross* profit margin.

As Weinstein recognizes, the profit-split construct is keyed to the "value realized by Micro Focus through use of the Patents-in-Suit." (Sears Decl., Exh. A, ¶ 126.) But that value cannot be ascertained using only Micro Focus's *gross* profit margin. Gross margin accounts only for cost of goods sold, and does not account for operating expenses. *See Operating profit*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("Deducting the cost of goods sold from sales gives

7

gross profit. Deducting the operating expense (overhead) gives the operating profit."). According to one of the very documents that Weinstein used to calculate gross margin, the operating expenses associated with the accused products, which Weinstein ignores, are *three times* the expenses that he does take into account. (Sears Decl., Exh. C, MFPLC01243.) By omitting three-fourths of the expenses, he can opine that Micro Focus (or HPE) would have agreed to give Wapp *all* its operating profit on the accused products, plus another ▇▇▇▇ to boot.

Because the license obtained through the hypothetical negotiation would not relieve Micro Focus of its operating expenses, the "value realized by Micro Focus"—and thus, a reasonable royalty arrived at through such a negotiation— cannot be calculated without taking those expenses into account. "The reliability analysis applies to the facts underlying the expert's opinion" and "the link between the facts and the conclusion." *Knight*, 482 F.3d at 355. Because the link between gross margin and the "value realized by Micro Focus" is unreliable, Weinstein should not be permitted to give an opinion about gross (rather than operating) profits.

**C.     The Weinstein–Malek apportionment is unreliable.**

For his apportionment opinion attributing ▇▇▇ of the accused products' profits to the accused features, Weinstein is "entirely reliant on Dr. Malek," Wapp's technical expert. (Sears Decl., Exh. B, 158:1–3.) As Micro Focus shows in a companion motion directed to him, Malek's ▇▇▇ opinion is unreliable and hence inadmissible. Thus, because Weinstein cannot be used as a hearsay conduit for Malek's inadmissible opinion, *see Image Processing Techs.*, 2020 WL 3288076, at *3, Weinstein has no admissible apportionment opinion to offer; and without some proper apportionment, his entire calculation runs afoul of the EMVR and must be excluded.

**D.     Using return on invested capital (ROIC) to determine the bargaining split is another one-size-fits-all rule of thumb that cannot survive appellate review.**

The final step in Weinstein's calculation is to multiply apportioned gross profits by

8

███ That factor is based on Micro Focus's return on invested capital, or ROIC. In December 2014, Micro Focus's ROIC was ███ Weinstein posits that in a hypothetical negotiation, Micro Focus would have accepted its ROIC and given the remaining ███ of the apportioned profits to Wapp. This use of ROIC to calculate patent damages is Weinstein's own innovation: so far as Weinstein knows (or Micro Focus's research reveals), he is the only one who has adopted it. (Sears Decl., Exh. B, 188:18–189:4.) It "strikes [him] as an appropriate way to determine the outcome of the hypothetical negotiation," (*id.* at 189:15–17), ████████████████████ ████████████████ (with no known rulings on admissibility, yet), (*id.* at 193:8–10). Each time, he has used it the same way as here: the accused infringer gets its ROIC, and the patentee gets the rest, regardless of the particular facts and circumstances. (*Id.* at 191:4–192:8.)

This is not Weinstein's first attempt to streamline patent damages analysis. Previously, he advocated the so-called Nash bargaining solution, "whereby outcomes often wound up to be an even split between the parties." (Sears Decl., Exh. B, 216:17–19.) He thought "that that might be a useful addition" to the patent damage expert's toolbox; "but the courts have disagreed"— "unfortunately, as far as [he's] concerned." (*Id.* at 216:19–23.) The Federal Circuit rejected the Nash bargaining solution because, like *any* rule of thumb, it was "insufficiently tied to the facts of the case." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1334 (Fed. Cir. 2014).

So too here. Micro Focus's ROIC is not "tied to the particular facts." *See VirnetX*, 767 F.3d at 1334. Because it bears no particular relation either to the asserted patents or to the accused products, using ROIC to determine the bargaining split would result in the same split even with a different set of patents or different accused products. *Limelight Networks, Inc. v. XO Communications, LLC* is instructive. There, the patentee's expert used an accused infringer's weighted average cost of capital, or WACC, in the so-called Rubinstein model. That was rejected

9

because "using WACCs the way he does has no relationship to the patents in *this* case and cannot reliably show how the parties would negotiate over *these* patents." No. 3:15-CV-720-JAG, 2018 WL 678245, at *3 (E.D. Va. Feb. 2, 2018) (italics added). So too here: Weinstein's use of ROIC has no relationship to the specific patents asserted by Wapp—or to the accused products or the accused features of those products. Therefore, Weinstein has not presented a reliable "link between the facts and the conclusion." *See Knight*, 482 F.3d at 355.

In sum, each factor in Weinstein's damages calculation should be excluded.

### E. Weinstein should not be allowed to channel inadmissible hearsay or irrelevant promotional materials, or to give legal opinions.

Weinstein's report is filled with statements he is not qualified to make himself, for which he acts as a hearsay conduit—for Malek, or for third-party publications not admissible under the learned-treatise exception, or for Wapp's pleading. These are inadmissible under the hearsay rule. His report also includes many paraphrases or summaries of statements in Micro Focus documents that do not relate to the accused features of the accused products. These are inadmissible under Federal Rules of Evidence 402 and 403. Finally, his report includes legal opinions, which experts are not permitted to render. Therefore Wapp should not be allowed to elicit from Weinstein what is set forth in these paragraphs of his report: 19, 26–33, 35–42, 47–48, 52, 56, 69, 88, 89, 91–98, 100.a, 100.b, 100.e–j, 101, 104, 105, 107, 109, 110, and 112.

## V. CONCLUSION

Weinstein's overall damages calculation and his opinions as to each of its constituent—royalty base, profits, apportionment, and bargaining split—should be excluded. And he should be barred from repeating or paraphrasing hearsay or irrelevant promotional materials, or giving legal opinions.

Dated: January 12, 2021

Respectfully submitted,

By: */s/ L. Rex Sears*
L. Rex Sears (Admitted *Pro Hac Vice*)
Lead Attorney
Utah State Bar No. 8548
Jared J. Braithwaite (Admitted *Pro Hac Vice*)
Utah State Bar No. 12455
Alexis K. Juergens (Admitted *Pro Hac Vice*)
Utah State Bar No. 16861
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1361
rsears@mabr.com
jbraithwaite@mabr.com
ajuergens@mabr.com

Barry K. Shelton
Texas State Bar No. 24055029
Bradley D. Coburn
Texas State Bar No. 24036377
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, Texas 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com

Melissa Smith
GILLAM & SMITH
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

On January 8, 2021, counsel for Defendants conferred with counsel for Plaintiffs, who stated that Plaintiffs oppose the motion.

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document is being served via the Court's CM/ECF system on January 12, 2021, on all counsel of record who consent to electronic service per Local Rule CV-5(a)(3) or, otherwise, as required by local and federal rules.

/s/ <i>L. Rex Sears</i>