IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP \|and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SEATTLE SPINCO, INC., ET AL., <br><br> Defendants. | C.A. No. 4:18-cv-00469-ALM <br><br> **FILED UNDER SEAL** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT TESTIMONY FROM PLAINTIFFS' DAMAGES EXPERT, ROY WEINSTEIN**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. Mr. Weinstein Does Not Calculate a Royalty Based on the Entire Market Value of the Accused Products; Rather, He Calculates a Royalty Based on the Profits Attributable to the Claimed Inventions ................................................................................................................ 1

    B. Operating Expenses Need Not Be Considered, Particularly When They Cannot Be Directly Attributed to the Accused Products ............................................................................ 4

    C. Mr. Weinstein Properly Incorporated Dr. Malek's Apportionment into His Analysis ....... 6

    D. Mr. Weinstein's Split of Profits Attributable to the Patents-in-Suit at the Hypothetical Negotiation is Tied to the Facts of this Case .............................................................................. 7

    E. Defendants' "Catch-All" Argument Regarding Hearsay, Relevance and Legal Opinions is Unfounded ................................................................................................................................. 10

III. CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ............................................................................................... 5

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
   No. 2:18cv94, 2020 WL 5887916 (E.D. Va. Oct. 5, 2020) ............................................. 2, 3, 4

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ............................................................................................... 2

*Divix Golf Inc. v. Mohr*,
   No. 05CV1488-JAH, 2011 WL 12556367 (S.D. Cal. Aug. 19, 2011) ..................................... 6

*Douglas Dynamics, LLC v. Buyers Products Co.*,
   717 F.3d 1336 (Fed. Cir. 2013) ............................................................................................... 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................... 2

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ........................................................................................... 2, 3

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ............................................................................................... 9

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ................................. 3

*Fromson v. Western Litho Plate & Supply Co.*,
   853 F.2d 1568 (Fed. Cir. 1988) (overruled on other grounds) ............................................... 6

*Image Processing Technologies, LLC v. Samsung Elec. Co., Ltd.*,
   No. 2:20-cv-00050-JRG-RSP, 2020 WL 3288076 (E.D. Tex June 18, 2020) ......................... 7

*Limelight Networks, Inc. v. XO Communications, LLC*,
   No. 3:15-CV-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) .................................. 9, 10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018) ................................................................................................. 4

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) ................................................................................................. 6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................... 7

I.  **INTRODUCTION**

Defendants' *Daubert* Motion ("Motion") arguments are based upon a series of incorrect premises that are easily rejected.  **First**, Defendants argue that Mr. Weinstein seeks damages based on the entire market value of the accused products.  Dkt. 303 at Section IV.A.  He does not.  He fashions a royalty based only on those profits that are attributable to features covered by the patents-in-suit.  **Second**, Defendants incorrectly assert that "operating expenses" must be used in a damages calculation.  *Id.* at Section IV.B.  They need not be, particularly where the operating expenses are not tracked on a per-product basis.  **Third**, Defendants contend that Mr. Weinstein cannot rely on a technical expert's apportionment analysis because the apportionment analysis is unreliable.  *Id.* at Section IV.C.  The technical expert's apportionment analysis is reliable and Mr. Weinstein may rely upon that analysis in order to determine the profits attributable to the patents-in-suit.  **Fourth**, Defendants' incorrectly argue that Mr. Weinstein's split of the profits attributable to the patents-in-suit at the hypothetical negotiation is not tied to the facts of the case.  *Id.* at Section IV.D.  It *is* tied to the facts of the case, including specific facts regarding ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ at the time of the hypothetical negotiation.  **Fifth**, Defendants provide no rationale for their single-paragraph scattershot arguments regarding hearsay, relevance, prejudice, and improper legal opinion.  *Id.* at Section IV.D.

II. **ARGUMENT**

   A.  **Mr. Weinstein Does Not Calculate a Royalty Based on the Entire Market Value of the Accused Products; Rather, He Calculates a Royalty Based on the Profits Attributable to the Claimed Inventions**

Mr. Weinstein does not seek damages based on the entire market value of the accused products.  Rather, Mr. Weinstein calculates a royalty based on the profits attributable to the patents-in-suit.  Patent damages "must reflect the value attributable to the infringing features of the product, and no more." *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d

1

1295, 1301 (Fed. Cir. 2015). This is known as apportionment. "[T]he apportionment can be done by various ways including 'by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented feature; or by combination thereof.'" *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18cv94, 2020 WL 5887916, at *62 (E.D. Va. Oct. 5, 2020) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).

Weinstein properly segregated profit attributable to the patents-in-suit from profit attributable to non-patented features. ***First***, Mr. Weinstein calculated the profit ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. A at ¶¶ 86-92; Ex. 4 at pp. 11 and 17.[1] ***Second***, Mr. Weinstein segregates the profits that are attributable to the patents-in-suit and those that are not using Dr. Malek's apportionment analysis, which estimates ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. A at ¶¶ 114-18; Ex. 4 at p. 17. Thus, Mr. Weinstein determines ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in profit attributable to the patents-in-suit, while the remaining ▓▓▓▓▓▓▓▓▓▓▓▓▓ is not. *Id.* There is no basis to assert that Mr. Weinstein calculates a royalty based on the entire market value of the accused products.

Here, like in many cases affirmed by the Federal Circuit and district courts, Mr. Weinstein properly relied upon a technical expert's apportionment of the relative value of the patented and non-patented features. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312-1313 (Fed. Cir. 2018) (affirming apportionment analysis of technical expert based upon the relative value of the patented and non-patented functions of the accused products); *Centripetal Networks, Inc.*, 2020 WL 5887916, at *63 ("This is exactly the type of apportionment analysis that was performed in *Finjan, Inc. v. Blue Coat Sys., Inc.*, for which the Federal Circuit found the jury was entitled to

---

[1] Wapp's exhibits will be referred to numerically and are attached to the Declaration of Robert Kramer filed herewith. Defendants' exhibits are referred to alphabetically.

2

rely upon as substantial evidence to support damages."); *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 4268659, at *3 (N.D. Cal. Aug. 15, 2016) (finding that "[t]here is a factual foundation for [the] assumption [of Finjan's expert] to assign equal value to each product feature, and Finjan has outlined the precise evidence she relied on").  Indeed, Dr. Malek, the technical expert upon whom Mr. Weinstein relies, clearly delineates between the value of the patented features and the non-patented features in his apportionment analysis.  **First**, he notes that the accused products ██████████████████████████████████████████ ██████████████████████████████████████████ Ex. 1, Malek Report at ¶¶ 678-679.  He then notes that these functions can be performed on mobile and non-mobile applications.  *Id.*  **Second**, Dr. Malek painstakingly details why and how ██████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ *Id.* at ¶¶ 679-693.  **Third**, based on the various facts that Dr. Malek sets forth he (1) estimates that ████████████████████████ ████████████████████ of the accused products; and (2) that ████████ ████████████████████████████ is attributable to the patents-in-suit because there are no commercially acceptable non-infringing alternatives.  *Id.* at ¶¶ 678-693.

Dr. Malek's feature-based apportionment analysis is no different than the feature-based apportionment analyses in the two *Finjan* cases and the *Centripetal Networks* case cited above. This is a reliable apportionment method and Mr. Weinstein properly relied upon it to segregate profits attributable to the patents-in-suit from those that are not.  Rather than admit that Dr. Malek and Mr. Weinstein's combined apportionment analysis was proper, Defendants assert that a different type of apportionment analysis should have been performed, specifically, an apportionment based on customers "purchasing decisions" and "customer demand."  Motion at 5-

3

7. But there is no requirement that apportionment be performed this way. Indeed, the "Federal Circuit has recognized 'there may be more than one reliable method' in order to prove proper damages in an apportionment case." *Centripetal Networks*, 2020 WL 5887916, at *62. Here, Wapp's experts chose an accepted method of apportionment in patent damages cases—*i.e.*, relative value of the accused products' features. *Daubert* exclusion is inappropriate.

Defendants' citation to *Power Integrations* is inapposite. In that case, both parties agreed that the accused products contained valuable patented and non-patented features but the plaintiff submitted no evidence about "the extent to which those features were responsible for the products' value." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 978 (Fed. Cir. 2018). Here, in stark contrast, Wapp's experts expressly delineate between the value of the patented and non-patented features. Ex. 1 at ¶¶ 678-693; Ex. A at ¶¶ 114-118.

Wapp's experts properly isolated the value attributable to the patents-in-suit and derived a royalty based only on that revenue. The entire market value rule simply was not used.

### B. Operating Expenses Need Not Be Considered, Particularly When They Cannot Be Directly Attributed to the Accused Products

In Section IV.B. of their Motion, Defendants assert the false premise that a determination of "operating expenses" must be considered in addition to costs of goods sold. This is incorrect.

Mr. Weinstein properly calculated ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌—in order to determine the profitability of the accused products. This methodology is sound because, among other reasons, Micro Focus provided no further cost information—including operating expenses—on a per product basis:



Micro Focus has not provided product specific cost data. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌



Ex. A at ¶¶ 90-92.

Maayan Rubenstein, who was identified as knowledgeable about financial, accounting, and sales information relating to the accused products in Defendants' Second Amended Mandatory Disclosures (Ex. 3), was unequivocal at least two things: ███████████████ ███████████████████████████████████████████████████████████ ███████████████ There is thus no way—███████████████ ███████████████████████████████████████. Further, Defendants have no authority that "operating expenses" *must* be included in the determination of a damages base, particularly when ███████████████████████████████████████ ████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Ex. 2 at 25:21-26:8.

As Defendants' own witness on financial, accounting and sales information ███████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████. Mr. Weinstein properly included all costs that are directly attributable to the accused products and excluded those that are not. Ex. A at ¶¶ 90-92. Defendants' disagreement about Weinstein's "factual assumptions and considerations" regarding costs that underlie his analysis "go to the weight to be afforded his testimony and not its admissibility." *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). Defendants are free to cross-examine Mr. Weinstein on his

exclusion of operating expenses and reasons for doing so but his methodology is not unreliable.

Defendants' argument regarding the determination of profit suffers from two fundamental flaws.  **First**, it is bare attorney argument.  It fails to point to any source or authority that only considering costs directly attributable to a product is an unreliable methodology for determining a patent royalty or the profit of a product.  Defendants have no source or authority because what Mr. Weinstein did was entirely proper.  **Second**, Defendants' argument is built on the false premise that reliance on gross profit is unreliable and that operating expenses must be considered.  This is wrong as a matter of law.  The Federal Circuit has held that damages may be based on gross profit (which excludes operating expenses) or net profit:

> The royalty may, for example, be measured as a percentage of [Defendant's] gross or net profit dollars, or as a set amount per infringing plate sold, or as a percentage of the gross or net price received for each infringing plate.  The district court may rely on the present record if deemed adequate or may elect to receive expert testimony on "what royalty would be reasonable under the circumstances."  35 U.S.C. § 284.

*Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1578-1579 (Fed. Cir. 1988) (overruled on other grounds).  Further, the Federal Circuit has repeatedly held that "net profit" (what Defendants argue must be used here) is not a ceiling and reliance gross profit may be appropriate.  *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013).  A royalty may even be more than the price of the infringing unit and the infringer's gross and net profit margins.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995).  There is no requirement that operating expenses be relied upon in calculating damages, particularly when such expenses cannot be directly attributed to the accused products.  Any assertion to the contrary is a point for cross and not a basis for exclusion.  *Divix Golf Inc. v. Mohr*, No. 05CV1488-JAH, 2011 WL 12556367, at *17 (S.D. Cal. Aug. 19, 2011) (confirming royalty where expert "testified that gross profit is more important to the royalty assessment than net profit").

    **C.**    **Mr. Weinstein Properly Incorporated Dr. Malek's Apportionment into His Analysis**

Section IV.C. of Defendants' Motion simply incorporates Defendants' *Daubert* motion regarding Dr. Malek. For the reasons set forth in response to that motion, Dr. Malek's apportionment methodology is reliable and endorsed by federal courts. Moreover, as confirmed by the very case Defendants cite, "courts regularly permit experts to rely on other experts that by industry standards they can reasonably rely on." *Image Processing Technologies, LLC v. Samsung Elec. Co., Ltd.*, No. 2:20-cv-00050-JRG-RSP, 2020 WL 3288076, at *3 (E.D. Tex June 18, 2020). Mr. Weinstein may rely on Dr. Malek's feature-based opinions on apportioned value of the patents-in-suit to the accused products in order to calculate the profit that is attributable to the patents-in-suit.

### D. Mr. Weinstein's Split of Profits Attributable to the Patents-in-Suit at the Hypothetical Negotiation is Tied to the Facts of this Case

An expert's opinion regarding how a hypothetical licensor and licensee would split the profits attributable to the patents-in-suit is admissible if it is sufficiently tied to the facts of the case. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1334 (Fed. Cir. 2014). Here, Mr. Weinstein's opinion that the parties would have split ***the profits attributable to the patented technology*** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. A at ¶¶ 120, 126-130.

***First***, as discussed above, Mr. Weinstein determines the profits attributable to the patents-in-suit based on Defendants' financials and Dr. Malek's feature-based apportionment. Ex. A at ¶¶ 114-118. ***Second***, after isolating the profits attributable to the patents-in-suit, Mr. Weinstein uses the facts of the case to determine how the parties would split the profits attributable to the patents-in-suit. Mr. Weinstein opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

███. Ex. A at ¶¶ 126-130.

In light of the unequal bargaining power in Wapp's favor, Mr. Weinstein opines that Defendants would agree to an allocation of profits ███ ███ ███." Ex. A at ¶ 130 (emphasis added). At the time of the hypothetical negotiation, ███ ███ ███

███ *Id.*

There is nothing unreliable about Mr. Weinstein's opinion as it is rooted in the facts of the case. Mr. Weinstein's opinions use real world facts regarding the nature of the patented inventions and Defendants' own behavior to identify what ███ ███. Licensing a patent (*i.e.,* technology to be used in a product) is the investment of capital by the licensee at the hypothetical negotiation in order to obtain use of the invention. It is rational to opine that Defendants, as hypothetical licensees, would agree ███ ███. In the real world, Defendants would have sought ███ ███ This methodology is neither flawed, nor arbitrary.

Observing ███—in addition to other

8

facts regarding the technology (*e.g.*, no non-infringing alternatives) and the parties' bargaining power—is not a rule of thumb (like the 25% rule) or a model untethered from the facts of the case (like Nash bargaining in certain circumstances). It is the examination of facts regarding what Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. A at ¶¶ 120, 126-130. If anything, identifying what Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is the most probative evidence one could imagine regarding what percentage of profit Defendants would expect and agree to in a negotiation.

Defendants' arguments go to the weight of Mr. Weinstein's testimony and not whether his methodology is reliable. Courts routinely allow testimony regarding the split of the profits attributable to the patents-in-suit that are tied to the facts of the case such as "custom in the industry" like how Mr. Weinstein relied on Defendants' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1210 (Fed. Cir. 2010) ("Defendants' objection to Parr's 'one-third/two-third split' of operating profit margins as arbitrary is also unpersuasive. Par considered the custom in the industry, history of prior licenses, competitiveness of the parties, and the importance of the patented technology, among other factors . . . "). Mr. Weinstein relied on many of the same factors in arriving at his profit split as approved by the Federal Circuit, and his opinion is by no means "arbitrary."

Defendants' citation to the *Limelight* case is inapposite. The split in *Limelight* was based on the so-called "Rubinstein[] model, which essentially stands for the idea that the more patient party in a negotiation will fare better than the less patient party." *Limelight Networks, Inc. v. XO Communications, LLC*, No. 3:15-CV-720-JAG, 2018 WL 678245, at *3 (E.D. Va. Feb. 2, 2018). The expert then used weight average cost of capital to determine relative patience. *Id.* In contrast

9

to *Limelight*, Mr. Weinstein relies on very specific facts in this case including ▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉ at the very time of the hypothetical negotiation. Ex. A at ¶¶ 120, 126-130. These are facts personal to Defendants as to whether they will do a deal and not a speculative determination of "relative patience" tied to the cost of capital like in *Limelight*.

### E. Defendants' "Catch-All" Argument Regarding Hearsay, Relevance and Legal Opinions is Unfounded

Mr. Weinstein is not a "hearsay conduit." He is a qualified expert giving an opinion on a reasonable royalty for Defendants' infringement. Experts are allowed (1) to rely upon hearsay and publications in forming their opinion, and (2) to tell the jury the basis for their opinions. FRE 703 ("An expert may base an opinion on facts or other data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). Moreover, the basis of an expert's opinion is not hearsay because it is not used to prove the truth of the matter asserted under FRE 801(c). Rather, it is used to explain why one has such an opinion. As such, it is not hearsay and not excludable.

Defendants' unspecific arguments under FRE 402 and 403 should be rejected out of hand. Mr. Weinstein necessarily needs to address the accused products at a broader level than the "accused features" so that he can apportion down a royalty to the revenue attributable to the patents-in-suit. Finally, Defendants do not point to any statement that is an improper legal opinion. An expert necessarily needs to address the relevant legal framework—like the *Georgia-Pacific* factors or the construct of the hypothetical negotiation—in order to provide a damages opinion.

### III. CONCLUSION

For at least the foregoing reasons, Defendants' Motion should be denied.

Dated: January 26, 2021 /s/*Clyde M. Siebman*
  Clyde M. Siebman

  Clyde M. Siebman
  TX Bar No. 18341600
  **Siebman, Forrest, Burg & Smith LLP**
  Federal Courthouse Square
  300 North Travis St.
  Sherman, TX 75090
  908/870-0070 Fax: 903/870-0066

  Deron R. Dacus
  TX Bar No. 00790553
  ddacus@dacusfirm.com
  **THE DACUS FIRM, PC**
  821 ESE LOOP 323, Suite 430
  Tyler, TX 75701
  902/705-1117 Fax: 903/581-2543

  Robert F. Kramer
  CA Bar No. 181706 (Admitted E.D. Texas)
  rkramer@feinday.com
  M. Elizabeth Day
  CA Bar No. 177125 (Admitted E.D. Texas)
  eday@feinday.com
  David Alberti
  CA Bar No. 220625 (*pro hac vice pending*)
  dalberti@feinday.com
  Sal Lim
  CA Bar No. 211836 (*pro hac vice pending*)
  slim@feinday.com
  Russell S. Tonkovich
  CA Bar No. 233280 (Admitted E.D. Texas)
  rtonkovich@feinday.com
  Marc C. Belloli
  CA Bar No. 244290 (*pro hac vice pending*)
  mbelloli@feinday.com
  Sven Raz
  CA Bar No. 222262 (*pro hac vice pending*)
  sraz@feinday.com
  Andrew Hamill (Admitted E.D. Texas)
  CA Bar No. 251156
  ahamill@feinday.com
  FEINBERG DAY KRAMER ALBERTI
  LIM TONKOVICH & BELLOLI LLP
  577 Airport Boulevard, Suite 250
  Burlingame, California 94101

Telephone: (650) 514-2747
Facsimile: (650) 618-4368

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that the foregoing document is being served via email on January 26, 2021, on all counsel of record who have consented to electronic service.

/s/ *Clyde M. Siebman*
Clyde M. Siebman