**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP., | |
| Plaintiffs, | Case No. 4:18-cv-00469-ALM |
| v. | **JURY TRIAL DEMANDED** |
| SEATTLE SPINCO, INC., ET AL., | |
| Defendants. | |

**DEFENDANTS' MOTION TO EXCLUDE SUPPLEMENTAL APPORTIONMENT
OPINIONS FROM PLAINTIFFS' TECHNICAL EXPERT, DR. SAM MALEK**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   ADDITIONAL BACKGROUND .......................................................................... 2

    A.  Prior *Daubert* proceedings ............................................................................. 2

    B.  Malek's all-protocols opinion and Wapp's nominal disavowal of it ............... 3

    C.  LoadRunner licensing bundles ....................................................................... 5

    D.  Malek's supplemental apportionment opinions and analysis ........................... 6

III.  ARGUMENT ........................................................................................................... 7

    A.  Malek has not done a proper *Finjan* analysis. ................................................. 7

        1.  Malek did not correctly identify top-level functions—which should be protocol specific. ........................................................................................................ 8

        2.  Top-level functions cannot be read off from shifting subheadings in marketing documents, either. ................................................................................. 10

        3.  Malek still has not determined the ratio of *infringing* functions to *total* functions. ... 11

    B.  Through Malek's supplement, Wapp has broken its promise to limit its case to the two protocols that Malek accused in his written infringement report. ........................... 11

        1.  Malek breaks Wapp's promise by counting unaccused protocols as "patented features." .......................................................................................... 12

        2.  Malek breaks Wapp's promise by using the same apportionment for bundles that do and bundles that do not include accused protocols. ................................. 12

        3.  Malek's definition of "the patented function" also breaks Wapp's promise—and leads to anticipation by older versions of LoadRunner. ............................. 12

    C.  Malek's apportionment for the free Community License bundle cannot be used to apportion revenues generated by the bundles for which Micro Focus charges .............. 13

IV.   CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. 3M*,
   265 F.3d 1349 (Fed. Cir. 2001)...........................................................................................4, 9

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
   No. 2:18CV94, 2020 WL 5887916 (E.D. Va. Oct. 5, 2020) ....................................................7

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)..................................................................................... *passim*

*Garretson* v. *Clark*,
   111 U.S. 120 (1884)......................................................................................................2, 3, 6

*Polaroid Corp. v. Eastman Kodak Co.*,
   789 F.2d 1556 (Fed.Cir.1986)...............................................................................................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)............................................................................................14

**Other Authorities**

FED. R. EVID. 702....................................................................................................................1

FED. R. EVID. 703....................................................................................................................1

Defendants ("Micro Focus") move to exclude supplemental apportionment opinions offered by Dr. Sam Malek, the technical expert engaged by plaintiffs ("Wapp"), under FED. R. EVID. 702 and 703 and as inconsistent with Wapp's prior representations to the Court. In addition to an authenticating declaration from counsel, L. Rex Sears, this motion also is supported by a declaration from Christine Ewing, Micro Focus's 30(b)(6) designee on the marketing documents that Malek bases his supplement on, and Dr. Matthew B. Shoemake, the Micro Focus expert who rebutted Malek's original apportionment opinions.

## I.      INTRODUCTION

Wapp has both a damages expert, Roy Weinstein, and a technical expert, Dr. Sam Malek. Weinstein's damages opinions are the subject of a still-pending *Daubert* motion (Dkt. 303).

Weinstein calculates damages "in four steps: (1) aggregating net revenues from the accused products, (2) multiplying by Defendants' gross profit margin…; (3) applying an apportionment factor (61.6%); and (4) splitting the apportioned gross profits… to Plaintiffs and…to Defendants (Dkt. #305 at p. 9)." (Dkt. 386 at 8.) Weinstein is "entirely reliant" on Malek for the apportionment factor used in his calculation. (*See id.*)

Micro Focus moved to exclude Malek's apportionment opinions. (Dkt. 305.) The Court agreed that Malek's apportionment was problematic; but instead of excluding it altogether, the Court ordered that Malek serve a supplemental report, and it authorized Micro Focus to both depose Malek on his supplement and "raise a further challenge to the supplement at the Pre-Trial Conference." (Dkt. 386 at 13.) Malek served his supplement on February 11, as ordered; and Micro Focus deposed him this past Friday, February 19—the earliest date on which he was available. (Sears Decl. ¶ 8.)

Malek's supplemental apportionment opinions and analysis are, if anything, even more

deeply flawed than the originals. Moreover, they are flatly inconsistent with representations that Wapp made in order to moot a Micro Focus motion to supplement its invalidity contentions. Finally, there is a fundamental disconnect between Malek's supplemental apportionment and the use Weinstein would make of it: Malek's apportionment supplement is based on a "community license" that Micro Focus gives away, for free; but Weinstein will use it to apportion profits from revenue-generating licenses. Therefore the Court should exclude Malek's supplement. This also is another ground for excluding Weinstein's damages calculations, in addition to those presented in Micro Focus's still-pending motion (Dkt. 303), because those calculations cannot be presented to the jury without apportionment. *See Garretson* v. *Clark*, 111 U.S. 120, 121 (1884) ("the patentee … must in every case give evidence … to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features").

## II.    ADDITIONAL BACKGROUND

### A.    Prior *Daubert* proceedings

Malek's original apportionment analysis had "three steps": first, determining "the relative value of virtualized vs. non-virtualizing testing," which Malek claims is 80%; second, determining the relative value of "virtualized testing of mobile applications versus virtualized testing of non-mobile testing," which Malek claims is 77%; third, multiplying the two: 80% x 77% = 61.6%. (*See* Dkt. 386 at 8.) In its ruling on Micro Focus's *Daubert* motion, the Court found problems with each step. There was no "underlying economic analysis" for Malek's 80% factor, and his overall apportionment was "not sufficiently tied to the facts of the case." (*Id.* at 10, 11.) The 77% factor, in turn, comes from a document that reports how much "of the time spent online is using mobile devices in the USA" in June 2019; the Court observed that Malek had not given any "citation … to support using this metric as a proxy for value." (*Id.* at 8.)

Accordingly, the Court directed Malek to serve a supplemental report, to "(1) provide further
justification for the 80% figure such that there is an underlying economic rationale; and (2) tie
the apportionment factor to the specific facts at hand, as required in [*Finjan, Inc. v. Blue Coat
Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018)]." (*Id.* at 13.)

**B.    Malek's all-protocols opinion and Wapp's nominal disavowal of it**

Malek's original apportionment analysis also spawned other relevant motions practice,
beyond Micro Focus's *Daubert* motion. Micro Focus's LoadRunner products[1] account for 97%
of Wapp's damages claim. LoadRunner has 37 different "scripting protocols." The infringement
analysis in Malek's original report is based on only *two* of those 37 protocols. So when Malek
was deposed about his original report, he was asked whether his apportionment excluded the
value of the 35 unaccused protocols, as the law requires. *See Garretson*, 111 U.S. at 121 ("the
patentee … must … apportion … between the patented feature and the unpatented features").
Malek responded that he did not need to do so because *all 37* protocols infringe:

> Q. … So the short answer is that you did not take into account the other 35
> scripting protocols that are available … when you arrived at this 80 percent
> figure …?
>
> [Objection]
>
> THE WITNESS: No, I disagree with that.
>
> Q. … So you did consider the other -- the value of the other scripting protocols?
>
> [Objection]
>
> THE WITNESS: As I said … for finding the claim limitations … in the accused
> products, I'm not pointing to a particular protocol, right? So all the protocols in
> my opinion are infringing. …

(Sears Decl., Exh. B at 258:2–18.)

---

[1] There are three LoadRunner products: LoadRunner Professional (LRP), LoadRunner Enterprise
(LRE), and LoadRunner Cloud (LRC). The term "LoadRunner," without modifiers, is intended
to cover all three.

It is a "truism" of patent law that "[t]hat which infringes if later anticipates if earlier." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (in part quoting *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573, (Fed.Cir.1986)). Wapp's patents predate the two specific LoadRunner protocols on which Malek's written infringement report is based, but many of the 35 *other* LoadRunner protocols that Malek first accused of infringement in his deposition predate Wapp's patents by years. Thus, Malek's deposition testimony opened up a new anticipation defense, based on older LoadRunner products that included those older protocols—and Micro Focus promptly moved for leave to add that defense to its invalidity contentions. (Dkt. 313.)

Wapp defeated that motion for leave by disavowing the all-protocols infringement opinion that Malek gave in deposition. First, Wapp conceded that: "In his report, Dr. Malek's infringement analysis for each accused product combination includes either the TruClient – Native Mobile or TruClient – Mobile Web protocols. Dr. Malek's report does not set forth any analysis of the … protocols Defendants claim pre-date the patents-in-suit." (Dkt. 350 at 8–9.) Then Wapp's lead counsel solemnly declared: "Wapp has no intention of presenting new infringement theories"—i.e., theories beyond those set forth in Malek's original infringement report—"at trial." (Dkt. 350-1, ¶ 10.) Because "Plaintiffs unequivocally assert that Dr. Malek will testify only as to his opinions disclosed in his reports," which are limited to two specific protocols, the Court denied Micro Focus's motion as moot. (Dkt. 387 at 3.)

But as shown below, Malek's supplemental apportionment report resurrects the all-protocols infringement opinion that Wapp foreswore in order to defeat Micro Focus's motion to augment its invalidity contentions. Malek's supplement, like the defense that he gave of his original apportionment in deposition, entails that Wapp's patents are invalid as anticipated by older versions of the accused LoadRunner products. Thus Malek's apportionment supplement

4

should be excluded—or Micro Focus should be given leave to prove that it leads to anticipation.

**C.    LoadRunner licensing bundles**

As noted above, LoadRunner supports 37 distinct scripting protocols. Micro Focus licenses customers to use predefined "bundles" of protocols—some that include one of the two protocols which Malek's written report is based on, and others that do not. Malek's supplement relies on a 2021 Product Flyer (submitted herewith as Sears Decl., Exh. D) that identifies the current LoadRunner bundles and specifies which protocols are included in each bundle. As that flyer indicates, there are 18 protocol licensing bundles for LoadRunner, plus an "Enterprise Suite" that is composed of several such bundles.

Two of the 18 bundles are "Community Bundles," meaning they are "Free of Charge." One of those bundles includes *all* the protocols; the other includes only TruClient – Native Mobile (TCNM), which is one of the two protocols that form the basis for Malek's written infringement report. Of the 16 bundles that are not free of charge, only three include TruClient – Mobile Web (TCMW), the other protocol on which Malek's infringement report is based; and none includes TCNM. More specifically: the Mobile and IoT bundle includes TCMW plus seven other protocols; the Rich Internet Applications bundle includes TCMW plus two other protocols; and Web 2.0 includes TCMW plus eight other protocols. (Sears Decl., Exh. D.)

Malek's supplemental apportionment is directed to the all-protocols community bundle, which generates no revenue because Micro Focus gives it away for free. (*See* Sears Decl., Exh. C at 32:18–20 ["the product that I examined … comes with … a community license that gives you access to all the protocols"].) Therefore it cannot support Weinstein's damages calculation, which perforce is based on the 16 bundles that actually generate revenue.

Among the 16 bundles that Micro Focus charges for, Malek's supplemental

5

apportionment makes no distinction between the three bundles that do and the 13 that do not include a protocol that Wapp will accuse of infringement at trial; and among the three bundles that do include an accused protocol, Malek makes no distinction between the bundle that includes two other unaccused protocols, the bundle that includes seven other unaccused protocols, and the bundle that includes eight other unaccused protocols. (*See* Sears Decl., Exh. C at 34:24–35:15.) Because it does not distinguish between bundles that do and bundles that do not include an accused protocol, or between bundles that have more or fewer unaccused protocols, Malek's supplement does not "separate or apportion … between the patented feature and the unpatented features," *see Garretson*, 111 U.S. at 121, and it is not tied "to the specific facts at hand, as required," (*see* Dkt. 386 at 13).

**D.    Malek's supplemental apportionment opinions and analysis**

The stated objective of Malek's supplement is "to determine the relative value of ***testing mobile applications using a virtualized network environment***," which he calls "the patented function," to "non-virtualized network testing and non-mobile testing," which he calls "non-patented functions." (Sears Decl., Exh. A, ¶ 14.) To make that determination, Malek first asserts that the accused products have "only two top-level functions—virtualized networking testing and non-virtualized network testing." (Sears Decl., Exh. A, ¶ 25.) That specification of top-level functions is not stated in any Micro Focus document, but it "becomes clear" to Malek when he reads an "entire data sheet." (*See* Sears Decl., Exh. C at 18:19–19:6.)

Malek next sets about trying to decide what value to assign to each of those functions. To do that, he consults a "data sheet" for each of the LoadRunner products—LRP, LRE, and LRC.[2] Each data sheet includes a section headed "Key Features." Within that section are several

---

[2] See supra p. 3, fn. 1.

subheadings. Malek counts up the subheadings that he thinks virtualized testing is "core to," and then divides that by the total number of subheadings. According to Malek, the resulting percentage is the relative value of virtualized as opposed to non-virtualized testing. (*See* Sears Decl., Exh. A, ¶¶ 28–55.) By saying that virtualized testing is "core to" whatever functionality falls under a subheading, Malek does not mean that it infringes Wapp's patents; instead he means only that in his opinion, using the functionality otherwise than in a virtualized network environment "would really be not useful, not meaningful," or "would not be good." (*See* Sears Decl., Exh. C at 63:13–14, 68:24–69:14; *see also* Sears Decl., Exh. A, ¶ 24 ["Theoretically applications could be tested … on a non-virtual network environment."].)

The data sheets are marketing documents, not technical documents. (Ewing Decl. ¶ 12.) And the subheadings in those documents are not product features. (*Id.*, ¶ 13.) Underscoring the disconnect between the marketing documents' subheadings and the actual product features: Malek testified that the relevant features of the products themselves have not changed over the damages period, which runs from 2015 to 2021, (Sears Decl., Exh. C at 29:20–30:20)—but the subheadings that Malek uses as a proxy for those features have changed several times, both in content and number, over that same period, (Ewing Decl. ¶¶ 14–18; *see* Ewing Decl. Exhs. A–H).

## III.    ARGUMENT

### A.    Malek has not done a proper *Finjan* analysis.

By the Court's order on Micro Focus's first *Daubert* motion, "Dr. Malek is directed to … tie the apportionment factor to the specific facts at hand, as required in *Finjan*." (Dkt. 386 at 13.) In that case, "Finjan's expert … used the defendant's *technical* documents to separate the functionality of the accused product." *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No.

2:18CV94, 2020 WL 5887916, at *63 (E.D. Va. Oct. 5, 2020) (emphasis added). More

specifically:

> Finjan's expert, Dr. Layne-Farrar, based her apportionment analysis … on an architectural diagram prepared by [defendant] Blue Coat. The diagram … shows twenty-four boxes representing different parts of the [accused] Secure Web Gateway system. Dr. Layne-Farrar assumed that each box represented one top level function and that each function was equally valuable. Thus, because one function infringed the '633 patent, and three infringed the '731 patent, she used a 1/24th apportionment for the '633 patent and a 3/24th apportionment for the '731 patent.

*Finjan*, 879 F.3d at 1312–13. Here, Malek's methodology bears no more than a superficial

resemblance to that which *Finjan* approved—if even that.

### 1. Malek did not correctly identify top-level functions—which should be protocol specific.

According to Malek, the accused products "fundamentally only have two

functionalities—(1) testing applications in a virtualized network environment and (2) testing

applications in a non-virtualized network environment." (Sears Decl., Exh. A, ¶ 11.) But that

functional taxonomy does not appear in any Micro Focus document. Instead it is a contrived

division that Malek superimposes on the accused products in order to avoid confronting their

functional richness and sheer number of unaccused features.

Even if it had a legitimate source, still Malek's functional specification could not be used

as the basis for a *Finjan* analysis. The next step in a *Finjan* analysis, after top-level functions are

identified, is to determine which infringe and which do not. *See Finjan*, 879 F.3d at 1313

("Finjan's expert … based her apportionment analysis … on an architectural diagram prepared

by [defendant] Blue Coat"; "a Finjan technical expert … identified certain components within

the diagram that did and did not infringe"). But Malek does not say, with regard to either of what

he calls top-level functions, that it infringes: instead he says "the patented feature" is, more

specifically, virtualized testing *of mobile applications*—not testing in a virtualized network environment, per se. (*See* Sears Decl., Exh. A, ¶ 14.)

Nor *could* Malek say that virtualized testing, without more, infringes—without thereby conceding that the asserted claims are anticipated by older versions of LoadRunner. Malek explained in deposition that "by 'virtualized testing,' I'm referring to testing with Network Virtualization," (Sears Decl., Exh. C at 36:5–6)—which is another accused product. LoadRunner and Network Virtualization both were created in the 1990s, and they were integrated with each other by 2003. (Shoemake Decl. ¶¶ 17–47.) Wapp's patents, on the other hand, have an effective filing date of June 2006. (*See* Dkts. 1-1, 1-2, 1-3.) So if virtualized testing, as performed by LoadRunner in combination with Network Virtualization, is covered by Wapp's patents then those patents are invalid as anticipated because "[t]hat which infringes if later anticipates if earlier." *Brown*, 265 F.3d at 1352.

Indeed the same is true even of "***testing mobile applications using a virtualized network environment***," which Malek *does* identify as "the patented function." (*See* Sears Decl., Exh. A, ¶ 14.) That is because by 2003, when LoadRunner and Network Virtualization were integrated, LoadRunner had several protocols (including some that remain in the product today) that were either specially adapted or at least usable for what Malek calls mobile applications. (Shoemake Decl. ¶¶ 48–62.) So if Wapp's patents cover "testing mobile applications using a virtualized network environment," per se—rather than a more particularized type of testing that is specific to TCMW and TCNM, the two specific protocols that Malek accuses in his written infringement report—then they are anticipated by older versions of LoadRunner and Network Virtualization.

In order to serve as the starting point for a *Finjan* apportionment, the top-level functions have to be specific enough to be classified as infringing or not infringing. Here, because Wapp

"unequivocally assert[s]" that at trial its case will be limited to two particular LoadRunner scripting protocols, (*see* Dkt. 387 at 3)—and indeed Wapp *must* limit itself to those protocols, in order to avoid anticipation—that means the top-level functions should be protocol-specific, so that the functions that LoadRunner performs when using one or the other of those two accused protocols can be distinguished from the functions it performs when used with other protocols.

### 2. Top-level functions cannot be read off from shifting subheadings in marketing documents, either.

In addition to his contrived specification of top-level functions, Malek also engages in a counting exercise based on so-called "key features." More specifically, for each LoadRunner product, Malek compiles a list of subheadings in the "Key Features" section of that product's data sheet, and then uses that list as a basis for further analysis. Malek justifies his approach by claiming that the subheadings are Micro Focus's own specification of product features. But Malek is wrong: the subheadings are merely organizational constructs, not product features; the actual features, which are far more numerous, are identified in the text that follows the subheadings. (Ewing Decl. ¶ 13.) That should have been apparent to Malek. He knows the relevant features of the accused products did not change, from 2015 to 2021. (Sears Decl., Exh. C at 29:20–30:20.) But the data-sheet subheadings from which Malek compiles his list of "key features" have changed several times over that same period. (Ewing Decl. ¶¶ 14–18; *see* Ewing Decl. Exhs. A–H.) Shifting subheadings in marketing documents are no basis for a technical apportionment.

Moreover the data sheets that Malek relies on do not comprehensively describe the accused products' functionality, as Malek would have known if he had read the relevant deposition testimony of Micro Focus's 30(b)(6) witness. To the contrary, "it's typically *not* a recitation of every feature." (Sears Decl., Exh. F, at 45:5–6) (emphasis added.) This further

distinguishes the exercise that Malek engages in from *Finjan*, where one of the defendant's

engineers had testified that the diagram on which Finjan's expert relied "represent[ed] the full

scope of [the accused product's] functionality." *Finjan*, 879 F.3d at 1313.

> **3.      Malek still has not determined the ratio of *infringing* functions to *total* functions.**

After the accused products' top-level functions are identified, the next step in a *Finjan*

analysis is "determining the ratio of patented functions to total functions." (Dkt. 386 at 12.) As

the Court observed, "Malek [did] not follow through with this final step" in his original

apportionment analysis. (*Id.*) He does not follow through with this step in his supplement, either.

Instead Malek counts the number of so-called "key features" (typographical artifacts,

really) to which he thinks virtualized testing is "core," and divides *that* number by the total

number of such "features." But even Malek admits that virtualized testing being *core* to a feature

is not the same as the feature being *patented*. (*See* Sears Decl., Exh. C at 63:13–14, 68:24–69:14;

Sears Decl., Exh. A, ¶ 24.) Properly done, a *Finjan* analysis apportions value between patented

and unpatented functions by anchoring apportionment in the *infringement* analysis. By

disregarding whether a feature *infringes* and considering instead whether, in his opinion,

virtualized testing makes that feature *better* (or more worthwhile), Malek untethers the analysis

from infringement and thereby defeats its entire rationale. Malek's supplement presents at best a

poor counterfeit of a proper *Finjan* analysis, far removed from the real thing.

**B.      Through Malek's supplement, Wapp has broken its promise to limit its case to the two protocols that Malek accused in his written infringement report.**

As more fully explained above, Malek defended his original apportionment analysis by

testifying that "all the protocols … are infringing." Then, to avoid Micro Focus's addition of an

anticipation defense based on that testimony, Wapp and its counsel promised to limit Wapp's

case to the two specific protocols (TCMW and TCNM) that Malek had accused in his written infringement report. *See supra*, § II.B. Malek's supplement breaks that promise, in many ways.

**1.      Malek breaks Wapp's promise by counting unaccused protocols as "patented features."**

One of the clearest breaches is expressly counting other protocols as patented features. The first "Key Features" subheading in the LRP data sheet is "Test Against a Broad Range of Applications and Protocols." (Sears Decl., Exh. A, ¶ 28.) Under that subheading, the "data sheet identifies 'Web/Mobile, Webservices, MQ, HTML5, WebSockets, AJAX, Flex, RDP, Database, Remote Terminal Emulators, Citrix, Java, .NET, Oracle, and SAP' as examples of applications and protocols that can be tested." (*Id.*) *None* of those protocols is accused by Malek in his written report. But Malek concludes that "[v]irtualized testing is core to this feature" and, therefore, includes this subheading in his tally of "features enabled by the claimed invention." (*Id.*, ¶ 37.)

**2.      Malek breaks Wapp's promise by using the same apportionment for bundles that do and bundles that do not include accused protocols.**

Another breach is Malek's failure to distinguish between LoadRunner protocol bundles. As explained above, each LoadRunner license is for a particular, predefined bundle of protocols. Of 16 revenue-generating bundles, 13 do not include either of the protocols that Malek accuses of infringement in his written report. (Sears Decl., Exh. D.) But Malek *apparently* applies the same apportionment across all bundles. (*See* Sears Decl., Exh. C at 31:7–35:15.) Claiming a 61.6% apportionment for bundles that do not include *either* of the protocols Malek accuses of infringement in his written report breaks Wapp's promise to limit its case to those two protocols.

**3.      Malek's definition of "the patented function" also breaks Wapp's promise— and leads to anticipation by older versions of LoadRunner.**

The most sweeping breach is Malek's definition of "the patented function," for purposes of his apportionment, as "***testing mobile applications using a virtualized network environment***."

(*See* Sears Decl., Exh. A, ¶ 14.) That is inconsistent with the promise to limit Wapp's case to the two protocols accused in Malek's written infringement report because LoadRunner includes several *other* protocols, besides TCMW and TCNM, which can be used to test what Malek calls "mobile applications" using a virtualized network environment—one obvious example being "Web – HTTP/HTML (for mobile applications)." (*See* Sears Decl., Exh. E.)

Moreover, like his prior testimony that "all the protocols … are infringing," Malek's more recent definition of the patented function as "testing mobile applications using a virtualized network environment" again leads to anticipation. That is because as explained above, by 2003 (three years before the effective filing date of Wapp's patents), LoadRunner was already integrated with Network Virtualization and it had several scripting protocols that were either specially adapted or at least usable for what Malek calls mobile applications. (Shoemake Decl. ¶¶ 17–62.) So if Wapp's patents cover "testing mobile applications using a virtualized network environment," per se—rather than a more particularized type of testing that is specific to the two accused protocols, TCMW and TCNM—then they are anticipated by older versions of LoadRunner and Network Virtualization. And Micro Focus should be allowed to prove that fact.

## C.    Malek's apportionment for the free Community License bundle cannot be used to apportion revenues generated by the bundles for which Micro Focus charges.

As explained above, LoadRunner licenses are for particular bundles of scripting protocols. There are 18 such bundles, including: a free Community License bundle that includes all the protocols; three paid-for bundles that include the TCMW protocol that Malek accused in his written infringement report; and 13 paid-for bundles that do not include either of the accused protocols. The three paid-for bundles that include the TCMW protocol include other protocols as well: Mobile and IoT includes seven others; Rich Internet Applications includes two others; and Web 2.0 includes eight others. (Sears Decl., Exh. D.) When pressed in deposition about whether

13

his apportionment is the same for all bundles, regardless of the number of unaccused protocols it includes or whether it includes an accused protocol at all, Malek dodged by limiting his apportionment opinion: "the product that I examined … comes with … a community license that gives you access to all the protocols." (Sears Decl., Exh. C at 32:18–20.)

But the damages calculation that Weinstein makes, using Malek's apportionment, is not based on the free Community License that Malek uses as the basis for his apportionment; if it were, damages would be $0. Instead Weinstein bases his calculation on revenues from the bundles for which Micro Focus charges—which include varying ratios of accused to unaccused protocols and in most cases no accused protocols *at all*. "An admissible apportionment opinion … '… must be based on the incremental value that the patented invention adds to the end product.'" (Dkt. 386 at 7–8, quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)). Manifestly, an apportionment that gives Wapp 61.6% of the value of a license that does not include *any* accused protocol fails that basic requirement.

The availability of Micro Focus's free Community License raises another problem for Malek's apportionment. As Malek's deposition testimony confirms, *all* the functionality that he accuses of infringement is present in that free product. The differences between that free product and the products for which Micro Focus charges have to do with scaling up to larger and more complex tests: the Community License is limited to "1 Controller allowing 1 concurrent run, 1 PC Lifecycle user, and 50 permanent Vusers";[3] the products for which Micro Focus charges are not subject to those same limits. But those scaling features are entirely irrelevant to the asserted patents and Wapp's infringement theories—neither of which have anything to do with increasing

---

[3] https://www.microfocus.com/en-us/products/loadrunner-enterprise/pricing, under "What is included as part of the LoadRunner Enterprise Community license?"

the number of concurrent tests or users. (*See* Shoemake Decl. ¶¶ 66–67.) So Micro Focus gives the accused functionality away for free, and then makes all its money from unpatented features. Any true apportionment must therefore be at or near 0%. (*See id.*)

## IV.     CONCLUSION

In his original report, Malek gave an apportionment opinion that was not unsupported by economic analysis and untied to the facts and circumstances of the case. The Court gave Malek a chance to fix the problems. He has failed to do so. Therefore Malek's supplement should be excluded and with it, the Weinstein calculations that depend on Malek's apportionment.

Dated: February 21, 2021                    Respectfully submitted,

By: */s/ L. Rex Sears*
L. Rex Sears (Admitted *Pro Hac Vice*)
Lead Attorney
Utah State Bar No. 8548
Jared J. Braithwaite (Admitted *Pro Hac Vice*)
Utah State Bar No. 12455
Alexis K. Juergens (Admitted *Pro Hac Vice*)
Utah State Bar No. 16861
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1361
rsears@mabr.com
jbraithwaite@mabr.com
ajuergens@mabr.com

Barry K. Shelton
Texas State Bar No. 24055029
Bradley D. Coburn
Texas State Bar No. 24036377
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, Texas 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com

coburn@sheltoncoburn.com

Melissa Smith
GILLAM & SMITH
303 S. Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendants*

## CERTIFICATE REGARDING CONFERENCE

Dr. Malek was not made available for deposition on his supplement until Friday, February 19, 2021. Key grounds for the foregoing motion were not known until the deposition was taken.

The Court's order directing Dr. Malek to file his supplement and authorizing his deposition also allows Micro Focus to "raise a further challenge to the supplement at the Pre-Trial Conference," (Dkt. 386 at 13), which is set for Monday, February 22, 2021. To raise that challenge as authorized means filing the foregoing motion by Sunday, February 21 (today).

Undersigned counsel received multiple emails from Wapp's counsel this morning, and replied to one of those emails with a request to meet and confer about this motion, but that request has gone unanswered. The undersigned will continue to attempt to confer with Wapp's counsel.

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served via the Court's CM/ECF system on February 21, 2021, on all counsel of record who consent to electronic service per Local Rule CV-5(a)(3) or, otherwise, as required by local and federal rules.

/s/ *L. Rex Sears*

16